ILLINOIS STEEL COMPANY, Appellant, vs. SCHROEDER and others, Respondents.

*September 4—December 13, 1907.*

*Equity: Quieting title: Jurisdiction: Subject matter: Multiplicity of suits.*

1. In an action in equity it was alleged in the complaint, among other things, that there were pending, at issue and undetermined, eighty-four several actions in ejectment against the several named defendants, all brought by the present plaintiff; that there existed a conspiracy and combination among the several defendants to maintain their several defenses; that plaintiff had been put to great expense and delay in enforcing its rights; that each of the several defendants claimed title to his particular tract through an entry and subsequent adverse possession by M. thirty-four years prior to the commencement of the equity action; that each defendant tacked his possession, also claimed to have been adverse, to that of M.; that without such adverse possession of M. the several defendants had no title; and that the determination of M.'s adverse possession

would settle the title and rights of all the defendants. It was further alleged that the several ejectment actions had been pending nine or ten years, and that one had been determined in plaintiff's favor by the supreme court and others by the trial courts. It also appeared that each defendant claimed a separate and distinct tract of land from all the others, and that the subject matter of each defendant's controversy was separate and distinct from the subject matter of every other defendant. *Held:*

(1) The questions of law and fact involved and the community of interest alleged were not such as gave equity jurisdiction to determine in one suit the rights of all of the defendants and avoid a multiplicity of suits.

(2) The complaint showed separate and distinct subject matters.

(3) The subject matter of each ejectment action was not evidence or any item of evidence by which the defendant attempted to prove his title, but only evidence of the particular tract of land claimed and the distinct tort by which it was claimed he wrongfully withheld it.

(4) The subject matter of each ejectment action must be determined from the pleadings in that action.

(5) Upon the facts set up in the complaint equity ought not to take jurisdiction.

2. A multiplicity of suits does not mean a multitude of suits. That term does not apply merely because each of several parties jointly and severally liable may be independently sued, but applies where one party may be sued several times in relation to the same subject matter in its entirety, or in respect to some element or elements thereof.

MARSHALL and SIEBECKER, JJ., dissent.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This action was brought in equity. All the defendants, except *Valentine Zelin* and wife, demurred on the following grounds: (1) That there is another action pending between the same parties for the same cause; (2) that several causes of action have been improperly united; (3) that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained and plaintiff appealed.

The complaint is very voluminous, the material allega-

tions of which, so far as necessary to consider upon this ap-
peal, are in effect that the plaintiff is the owner of certain
land situate on what is known as Jones Island; that each de-
fendant is in possession of a separate tract of said land; that
plaintiff has the record title and is the owner in fee simple
absolute; that such lands are bounded on the east by Lake
Michigan, on the north by the outlet of Milwaukee river, on
the west by the combined waters of the Milwaukee, Menom-
inee, and Kinnickinnic rivers, and on the south by other lands
owned and possessed by plaintiff; that there is no means of
access to said land except by boat or over other lands of
plaintiff, over which no right of passage exists; that said
lands are worth $40,000 and comprise the greater part of
Jones Island; that each defendant claims to own the land
occupied by him under title acquired by adverse possession;
that all defendants' titles were acquired starting with one
Muza under an alleged entry by Muza in 1872, which ad-
verse possession he held until after August 1, 1886; that
plaintiff and its predecessors have always been in possession
of Jones Island, except as to parts separately intruded into
and held by defendants and by others who have attorned to
the plaintiff, and others whose alleged claim or source of
claim and time and length of possession is other and different
than the alleged claim or source of claim and time and length
of possession of the defendants; that plaintiff and its prede-
cessors have at all times paid taxes on said premises; that
the title of plaintiff and its predecessors has been a matter
of public record; that after August 1, 1886, the defendants,
and before that time other persons separately and at different
times, "squatted" upon or intruded into the possession of sep-
arate, specific, distinct, and in most instances disconnected
and noncontiguous small portions of the land in question
without the consent of the owners and without right; that
plaintiff and its predecessors numbered the certain tracts
held by defendants and demanded that they take leases there-

for; that some of the defendants recognized plaintiff's title; that plaintiff did not know until March 27, 1900, that any attempt was to be made by defendants to claim title by adverse possession, and that no such idea was conceived until about 1899; that defendants and others occupying the tracts of land in question refused to recognize plaintiff's title until they were satisfied by proceeding in court that the plaintiff was the owner and holder of the paper title to said lands; that in February, 1896, plaintiff instituted separate suits against persons occupying said land for the purpose of satisfying defendants that its title was good; that in some of said cases judgments have been rendered in favor of the plaintiff; that in March, 1896, plaintiff commenced an ejectment action against one John Budzisz and August Budzisz to recover a specific piece of said land, and in said action the defendants based their claim upon the entry of Jacob Muza October, 1872, and adverse possession by him; that the questions of fact and law are the same in said case as the claims of the defendants in the instant case; that said case was appealed to the supreme court, and is reported in 115 Wis. 68, 90 N. W. 1019; that in June, 1897, plaintiff commenced ejectment actions against several of the defendants to recover specific portions of said land; that in some of these actions judgment was rendered in favor of the plaintiff; that in July, 1897, other like actions were commenced; that in September, 1897, and thereafter, other like actions were commenced, and in several of said actions final judgment in favor of the plaintiff has been rendered; that in none of the cases tried has the title to the land in controversy been finally adjudicated to be in the defendant or defendants in such actions; that the trial of said actions consumed a great amount of time; that eighty-four suits against the defendants are pending and undetermined; that a combination and conspiracy has been entered into between the defendants to raise money to unlawfully maintain and conduct the defenses of

each of the defendants and to assist in said defenses in unlawful and corrupt ways, and by fraudulent and perjured defenses and by unlawful means to accomplish the defeat of the plaintiff and to contribute a fund for such purpose, and such money is being used for such purpose, and that such defenses could not be maintained without it; that until April, 1899, the defense of the statute of limitation had not been set up, and that the defendants entered into a fraudulent scheme to and did set up such statute as a defense, and that the allegations respecting adverse possession are false; that none of defendants have title by adverse possession or otherwise; that the defendants intend to each claim through one Jacob Muza and to maintain that he took possession of Jones Island October, 1872, under claim of title exclusive of any other right and continued to hold adversely; that Jacob Muza did not in fact take possession until some time in 1878 or 1879, and, if he did then or at any time, his possession embraced none of the land in controversy between the plaintiff and any of the defendants; that neither Muza nor he and his privies combined had adverse possession for twenty years prior to the commencement of the ejectment suits in question nor for twenty years prior to August 1, 1896; that each separate tract claimed by each defendant was separately intruded into and separately occupied; that each of the intrusions was commenced at distinct and different times from the intrusions and occupations of other respective defendants or their predecessors and all of them were since August 1, 1886; that the defendants and each of them claims title through Jacob Muza by verbal transfers since August 1, 1886, or through some persons who succeeded to the possession or title by verbal transfer from Muza, or by mesne verbal transfers of title and possession thereof, the first of which was by Muza some time since August 1, 1886, and claim that they respectively tack their possession and occupation of said particular tract on the alleged possession of Muza and his successors and

privies; that none of the defendants hold under color of title; that each of the defendants claims only by virtue of tacking their respective possessions upon the alleged adverse possession of Jacob Muza or his successors; that each of the defendants' claims is founded wholly upon the contention that Jacob Muza held and maintained open, notorious, and continued possession; that Jacob Muza went upon Jones Island in 1872, but did not continue upon it or occupy the whole of it and abandoned the island in 1873, but returned some time in 1877 or 1878; that in 1878 or 1879 he took possession of a small part of the island.

The complaint further alleges that the defendants are irresponsible and insolvent, and that great expense has been incurred in the prosecution of the various ejectment suits and will be incurred in the future in consequence of the multiplicity of suits, and that plaintiff has sustained irreparable injury in consequence of carrying on the various ejectment suits pending at the time of the commencement of this action, being in number upwards of eighty cases, and that the defendants *Valentine Zelin* and *Mertzy Zelin* make claim to some or all of the specific tracts set out in the complaint. The complaint also sets up specifically the tract claimed as intruded into by each defendant and held by him, and prays that the plaintiff be adjudged the owner of each tract and entitled to immediate possession; that defendants be perpetually enjoined from contributing to any fund to assist in the alleged defenses; that the defendants account for rents, profits, and damages; that the plaintiff's claim of title be established against the claims of *Valentine Zelin* and *Mertzy Zelin.*

*Walter D. Corrigan,* for the appellant.

For the respondents there was a brief by *Fiebing & Killilea,* attorneys, and *Frank M. Hoyt* and *William F. Adams,* of counsel, and oral argument by *Mr. Hoyt.*

The following opinion was filed September 24, 1907:

KERWIN, J.   The main contention of appellant is that equity will take jurisdiction upon the facts stated in the complaint on the ground of interminable litigation, occasioned by multiplicity of suits, fraud, combination, and conspiracy between the several defendants in maintaining their defenses, and irreparable loss to the plaintiff.   The jurisdiction of courts of equity in a proper case to prevent multiplicity of suits is well established, but the doctrine is not always easy of application.   The multiplicity of suits sought to be prevented sometimes constitutes the inadequacy of legal remedies and calls forth the equitable jurisdiction.   When, however, we attempt to define the exact limits of this head of equity jurisdiction, we find much difficulty in prescribing the exact limits of the jurisdiction.   This becomes apparent from an examination of the numerous authorities cited in the able and exhaustive brief presented by the appellant.   It is manifest without discussion that the alleged conspiracy and combination on the part of the defendants to maintain their several defenses, or the great expense and delay alone, would not be sufficient to give a court of equity jurisdiction.   The right of the plaintiff to proceed in equity, therefore, upon the facts pleaded must be sustained, if at all, on the ground of preventing a multiplicity of suits.   This jurisdiction has been classified under four heads: (1) Where from the nature of the wrong and the rules of legal procedure the same party, in order to obtain complete relief, is obliged to bring a number of actions all growing out of one wrongful act and involving similar questions of fact and law.   (2) Where a dispute is between two individuals and one institutes or is about to institute a number of actions against the other, all depending upon the same issues of fact and law.   (3) Where a number of persons have separate claims against the same party, arising from some common cause governed by the same legal rule and

involving similar facts, and the whole matter can be settled in a single suit. (4) Where the same party has or claims to have a common right against several persons. 1 Pom. Eq. Jur. (3d ed.) § 245. Under these heads the jurisdiction of equity has been invoked to prevent multiplicity of suits. Early instances of the exercise of this jurisdiction appear by what were known as bills of peace and bills to quiet title. 1 Pom. Eq. Jur. (3d ed.) §§ 246, 247, 248. The appellant contends that his complaint is the "outgrowth from many of the principles which give creation to the bill of peace," "a modern bill of peace." But it is not important under our practice by what name we call the complaint. The question is: Are the facts stated sufficient to entitle the plaintiff to relief in equity? The gist of plaintiff's claim for equitable interference is substantially that, upon the allegations of the complaint, each of the several defendants claims title to his particular tract through entry and adverse possession of one Jacob Muza in 1872, and that each defendant tacks his alleged adverse possession to that of Muza, and without such adverse possession of Muza he has no title, and that the determination of Jacob Muza's adverse possession settles the title and right of all defendants. This presents sharply the main controversy in the case.

As appears from the record before us, the present action was commenced in July, 1906. At that time eighty-four of the ejectment actions commenced by plaintiff against defendants between February, 1896, and September, 1897, were pending, and the main purpose of the present action is to sweep these ejectment suits into it and determine the rights of all the defendants in one equitable action, on the ground that there is such a community of interest between the plaintiff and each of the defendants, centering in the point in issue, as to warrant a court of equity in taking jurisdiction, and especially since one of the ejectment actions commenced has been determined in favor of the plaintiff by the supreme

court (115 Wis. 68, 90 N. W. 1019) and others by the trial courts. Reliance is placed upon certain statements in Pomeroy's Equity Jurisprudence and a large number of cases are cited by appellant in support of the contention. While certain general language used by Mr. Pomeroy might be held, when considered in the abstract, to support in some degree the appellant's contention, when construed with other parts of the learned author's work it will be found to except cases like the one at bar. It is true that in discussing the third and fourth classifications heretofore referred to, Professor Pomeroy (1 Eq. Jur. 3d ed. § 268) uses the following very broad, general language, quoted in appellant's brief:

"From a careful comparison of the actual decisions . . . and which are quoted under the foregoing paragraphs, the following propositions are submitted as established by principle and by authority, and as constituting settled rules concerning this branch of the equitable jurisdiction. In that particular family of suits, whether brought on behalf of a numerous body against a single party, or by a single party against a numerous body, which are strictly and technically 'bills of peace,' in order that a court of equity may grant the relief and thus exercise its jurisdiction on the ground of preventing a multiplicity of suits, there does and must exist among the individuals composing the numerous body, or between each of them and their single adversary, a common right, a community of interest in the subject matter of the controversy, or a common title from which all their separate claims and all the questions at issue arise. It is not enough that, the claims of each individual being separate and distinct, there is a community of interest merely in the question of law or of fact involved or in the kind and form of remedy demanded and obtained by or against each individual."

It will be seen that in this quotation from Pomeroy, giving it its broadest scope, there must be a community of interest in the subject matter of the controversy or a common title from which all the separate claims and all the questions at issue arise. Even this broad language does not bring the plaintiff's case within it. Besides, the language of the first

part of the quotation is limited by other parts of the work, where it is said that it is not enough that the claims of each be separate and distinct—there must also be a community of interest in the questions of law and fact. And in his last edition (sec. 251½, 3d ed.) Mr. Pomeroy further emphasizes this exception to the general rule stated. Moreover, the broad rule laid down by Pomeroy is criticised in *Turner v. Mobile,* 135 Ala. 73, 33 South. 132, and *Tribette v. Ill. Cent. R. Co.* 70 Miss. 182, 12 South. 32. But the case at bar may be brought within the exceptions to the general rule recognized by Mr. Pomeroy. Here there is no such community of interest in the subject matter as is recognized by Pomeroy or a common title from which all the separate claims and all the questions at issue arise. Each defendant claims a separate and distinct tract of land from all others, and the subject matter of his controversy is separate and distinct from the subject matter of every other defendant. Nor does his right to recover depend upon a common title, from which all the questions at issue arise. Even assuming that each defendant claims through Muza, he is obliged to establish his right and title through himself and intervening grantors to Muza and tack his adverse possession, and the fact that one or several defendants failed to make title by adverse possession to a separate and distinct tract would not necessarily establish that others could not make title as to other separate tracts, even though it be admitted Muza's possession was a common item in the proof. The questions of law and fact and the community of interest are not the same so as to bring the case even within the broad principle laid down by Pomeroy in his statement of a general rule. Perhaps the broadest language of Pomeroy, quoted from at length in appellant's brief, will be found in 1 Pom. Eq. Jur. § 269. But even this language, in the light of other parts of the work, must be regarded as stating a rule not applicable to the case before us, and, as it

was intended by the author, must be read in the light of adjudicated cases. The effect to be given this language, in an effort to state a general rule applicable to certain cases, is explained in a note to sec. 251½ in the last edition of Mr. Pomeroy's valuable work. He there reviews the case of *Turner v. Mobile,* 135 Ala. 73, 33 South. 132, and shows that the rule is not applicable to ejectment actions where each action is based upon a separate tort for a distinct tract of land, since the determination of one of such actions does not necessarily establish or defeat the right of recovery in the others. It is true that it is not easy to reconcile all the judicial *dicta* upon the subject. Many cases may be found, some of which are cited by counsel for appellant, which tend to support the general proposition contended for by appellant. But a careful examination of them will show that they are quite dissimilar in their facts to the case before us. It is sufficient to say that we have found no case where equity took jurisdiction upon a state of facts similar to those stated in the complaint here.

We have examined the numerous authorities cited by appellant's counsel, but time will not permit a discussion of them. Many of them are cases coming within the principles of bills of peace, and some fall under distinct heads of equity jurisdiction, other than to avoid a multiplicity of suits. Some of these cases are reviewed in a very able opinion in *Hale v. Allinson,* 188 U. S. 56, 23 Sup. Ct. 244, also relied upon by appellant. This was an action by a receiver against several stockholders, where it was claimed that the cause of action against each stockholder was the same. The court, quoting and approving the language of another court, said (188 U. S. 79, 23 Sup. Ct. 253):

"The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other, but this is only part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up

his defense, and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by different defendants, the bill evidently becomes a single proceeding only in name. In reality it is a congeries of suits with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons."

The subject matter of each ejectment suit is not the evidence of title to the land embraced in the suit, but is entirely separate and distinct from every other ejectment action respecting other separate and distinct tracts of land. The complaint in the instant action shows separate and distinct subject matters, and the subject matter of each ejectment suit is not the evidence or any item of evidence by which the defendant attempts to prove his title, but the particular tract of land claimed and the distinct tort by which it is claimed he wrongfully withholds it, together with the alleged title of the plaintiff. The subject matter of each ejectment action must be determined from the pleadings in each action. Nor are the issues the same, as appears from the complaint. It avers that each defendant claims a separate and distinct tract, that it is claimed Muza took possession in 1872, and that each defendant claims under Muza or some grantee or successor of Muza, presumably of different parcels and at different times after 1872; so the extent of Muza's holding, as well as the extent of his entry, is at issue in each ejectment action. Now, since each defendant claims a separate and distinct tract through Muza or some grantee or successor of Muza, it is manifest that the claim of adverse possession and continuity of holding of each defendant as to his separate tract under the allegations of the complaint is separate and distinct, and the establishment of title or want of title in one defendant by adverse possession does not necessarily settle the question of other defendants' rights. The issues, therefore, are not the same, even if it is admitted that one item in the proof be the same in all the actions, to say nothing of

the issues to be tried in each action in case plaintiff prevails respecting improvements made in good faith while each defendant held adversely. The eighty-four ejectment actions are a bundle of separate suits. 1 Pom. Eq. Jur. (3d ed.) § 251½, and note; *Hale v. Allinson*, 188 U. S. 56, 23 Sup. Ct. 244. A multiplicity of suits does not mean a multitude of suits, as said in *Johnson v. Swanke*, 128 Wis. 68, 77, 107 N. W. 484:

"There is nothing alleged which can bring the case under that head of equity relating to the prevention of a multiplicity of suits. That does not apply merely because each of several parties jointly and severally liable may be independently sued. It applies where one party may be sued several times in relation to the same subject matter in its entirety, or in respect to some element or elements thereof."

The statutes of this state secure to a person in possession of land two jury trials. It does not appear from the complaint that two trials were ever had in any case against any party claiming to hold under Muza, not even in the *Budzisz Case*, referred to and relied upon by appellant. 115 Wis. 68, 90 N. W. 1019. In the *Budzisz Case* the defendant recovered below, and judgment was ordered by this court for plaintiff on the ground that the evidence conclusively established that defendants made no title to the tract or part of the island claimed by them. This, however, does not establish that the defendants might not on other evidence recover upon a new trial. Much less is it conclusive upon the rights of other defendants claiming other separate and distinct tracts of the island. Nor do we see why the defendants should be precluded from making title to their respective tracts in some other way than through Muza by the mere allegations of the complaint to the effect that they claim through him in an action brought for the purpose of sweeping them into equity, and thus depriving each of his right not only to one but to two jury trials. Upon any theory of the facts set up in the

complaint it is considered that equity ought not to take jurisdiction. *Barnes v. Beloit,* 19 Wis. 93; *Brown v. Cohn,* 88 Wis. 627, 60 N. W. 826; *Johnson v. Swanke,* 128 Wis. 68, 107 N. W. 481; *Turner v. Mobile,* 135 Ala. 73, 33 South. 132; *Whilehead v. Shattuck,* 138 U. S. 146, 11 Sup. Ct. 276; *Phelps v. Harris,* 51 Miss. 789; *Rogers v. Rogers,* 17 R. I. 623, 24 Atl. 46; *Hughes v. Hannah,* 39 Fla. 365, 22 South. 613; *Thomas v. Council Bluffs C. Co.* 92 Fed. 422; *Merrill v. Lake,* 16 Ohio, 373; 1 Pom. Eq. Jur. (3d ed.) § 177.

As has often been said by this and other courts, it is difficult to lay down any definite rule as to what special circumstances will enable the injured party to invoke the jurisdiction of a court of equity. Each case must rest in a large degree upon its own particular facts. As said in *Johnson v. Swanke,* 128 Wis. 68, 75, 107 N. W. 483:

"Manifestly, whether a case does or does not satisfy the test as to whether equity jurisdiction should be afforded is not always easy to determine. It must often be a matter of judgment, and necessarily so, where the precedents are not sufficiently clear to furnish the court a certain guide. In the latter situation the decision of the trial court should not be disturbed unless manifestly wrong. Where no certain guide exists as to any particular situation, by way of the general rule illustrated by precedents, as to whether it should be dealt with by equity jurisdiction, the matter in a large degree must be solved by the exercise of judicial discretion."

The court below refused to exercise its equitable jurisdiction and sustained the demurrer, and we cannot say that in the light of the authorities its judgment should be disturbed.

*By the Court.*—The order appealed from is affirmed.

Marshall, J. (*dissenting*). It seems best to write briefly in this case, stating, without extended discussion or citation of authorities, what, to my mind, are principles firmly intrenched in the jurisprudence of this state and govern this

case; principles which are important and have been worked out so carefully and stated so considerately and repeatedly that it would be a misfortune to have any of them overlooked or given such little significance as to create doubt in a field where so much has been done to render the law easily understood.

In determining whether a complaint states a good cause of action in equity, the paramount inquiry is: Does it on the whole come under one of the established heads of equity jurisprudence? The prevention of a multiplicity of suits is one of such heads.

When the paramount inquiry mentioned shall have been solved in favor of a pleading, the next important inquiry is whether the pleader has been successful in his efforts to state a cause of action under the head selected with sufficient clearness to warrant equity jurisdiction in dealing with the matter.

The pleader in the case in hand unquestionably chose one of the recognized heads of equity jurisprudence as fitting the situation he desired to bring to the attention of the court. There were a very large number of pending suits and situations forming separate and sufficient grounds for judicial interference. The situation in that regard was one of the most distressing from the standpoint of the plaintiff and the judicial forum having to deal therewith that was ever presented for judicial consideration.

Where it is desired to prevent a multiplicity of suits the fact that many or all of them, if treated separately, would necessarily be legal actions each involving the constitutional right of a separate trial by jury, is, of itself, not necessarily material, nor is the fact necessarily material that in many of the controversies there are issues not common to others, or that the parties interested in some of the issues as to some controversies are not interested in others, or that the controversy as between some parties in some or many respects is in-

dependent of the controversy as between others, so long as they all originated in one transaction or are connected with a single subject matter, either directly or through the questions involved. ·

The mere fact that by taking the multitude of controversies into one suit a very complicated matter will be presented is not, of itself, a fatal objection if, notwithstanding such complexity, simplicity is produced as compared with a multitude of separate actions requiring separate trials, each requiring more or less of the ground traversed at great expense in time and money in one to be again traversed in each of the others with like expenditures. The crowning feature of equity jurisprudence is its competency to take hold of a multitude of matters involving parties however numerous and interests however diversified, so long as they all have a common source or are connected with a single subject matter either directly or substantially, and treat all the issues of fact and law common to the many controversies, and those affecting them separately in an aggregation including the whole, and pronounce the right of the matter as to each of the parties interested in a single decree.

No common title as to one entire thing or community of rights in such thing, each party being interested in the one particular thing, title, or right to be settled by litigation, is absolutely essential to an action to prevent a multiplicity of suits. It is sufficient if there are sufficient common points as to title, rights, or questions of law or fact to warrant the court in the particular situation in opening its doors. The claims involved may be separate in time, and the relief required as to each may be different in kind, if there are so many common points of dispute that, under all the circumstances, in the judgment of the court, justice requires the situation to be dealt with as an entirety.

Subject to the principle stated, whether a particular situation is one proper to be judicially handled in equity as an

entirety is to be judged by its own particular facts unrestrained by any arbitrary or certain rules. The scope of the judicial view in reaching a conclusion should not be regarded as limited by precedent. The principle marks the boundaries. The precedents are to be regarded as guides but not as limitations. Where the given situation is clearly within the principles, but not within any precedent that can be found, the doors of equity should swing open and a new precedent be made, illustrating anew the crowning merit of its jurisprudence and its capacity to expand so as to deal with all new situations as they arise.

When the case is laid under an established head of equity jurisprudence, as that to prevent a multiplicity of suits, and it is clear that such multiplicity exists, and there are numerous points of law or fact, or both, involved, or title, or rights, or subject matters rendering the numerous separate controversies parts of one large subject matter, regardless of whether several or all of the numerous matters would, separately treated, judicially form separate grounds for separate legal actions with constitutional incidents, a question of fact is presented as to whether a court of equity ought or ought not to deal with the situation entire.

When a point is reached as above indicated the primary tribunal has a pretty wide scope within which to exercise judgment and its conclusion should not be disturbed on review unless it appears to be clearly wrong; so manifestly wrong as not to leave any substantial doubt on the question.

The last foregoing rule does not apply where it is plain that the court reached its conclusion guided by mistaken notions as to the legal principles involved.

Now we will briefly apply the principles stated to the complaint before us.

As before indicated, the complaint shows the existence of a very large number of controversies requiring judicial solution. The number is so large and the time required to try

each by itself so great that, if separate trials be accorded, either there must be such delay in the final determination of all the litigation as to render the legal remedy very inefficient as regards the plaintiff, or most or all other matters which have equal claims with the particular matter to be heard, and which of themselves require much, if not most, of the time of the court, must give way, to the prejudice and perhaps in many cases practical denial of justice. The expense of trying one or more subject matters separate from the rest would be very large and would be necessarily repeated as to each such matter. In the aggregate, the expense would be many times more as to the plaintiff than it would be if the entire controversy could be settled in one action, and if so settled the expense as to each defendant would, in all probability, whether he prevailed or not, be very much less than in case of a separate trial in a separate action, whether he prevailed or not. Trials relating to the matters involved, of the same nature as each of those which would be required if the numerous matters were tried separately, have been had in the past, covering a period of many years, characterized by many appeals to this court without any material progress having been made, as appears, respecting the facts, toward a final determination of the entire litigation.

The claim of the appellant primarily and in its general nature as to each defendant is the same. All of the adverse claims had a common origin: the alleged adverse entry and holding of the entire tract of land by Muza. The adverse claims have many important common points of law and fact. The claim of the plaintiff as to interruptions of the adverse holding by Muza, if such adverse holding ever existed, is common to most, if not all, of the defendants. The dominant issues characterized by the most serious difficulties, both as to the law and the facts, relate to the claimed adverse holding by Muza, and the litigation in that regard must necessarily be the same as to each, or nearly so, of the defendants.

Taking the situation as above pictured, and the picture, we think, is inadequately rather than over drawn, did the trial court fail in the exercise of judgment? At this point we hesitate. Great respect should be entertained here for the decision of trial courts on matters of fact. It should stop, at least, very little, if any, short of the dignity given to decisions by juries. Where there was a mistake as to legal guidance the matter must be treated here substantially as a court of original jurisdiction or sent back for retrial in the light of correct legal principles.

While it is very difficult to see how the trial court reached the conclusion complained of, it seems there is reasonable doubt on the question; yet the case is so near the boundary line between reasonable doubt and absence of it as to cause hesitation. There is good ground for belief that the trial court reached its conclusion by mistake of law. That belief may well be acted upon and probably ought to be. To our minds, assuming as we may fairly do that the prevailing party below contended there as to the law the same as here, it may well be that important legal principles were wholly overlooked or not adequately appreciated, and the decision complained of was the result. In our judgment, a court of equity ought, on the facts stated, to open its doors and put its strong arms around the entire situation involving all the numerous separate minor controversies mentioned in the complaint, and settle the same in one trial and by one judgment.

To that end it seems the order appealed from should be reversed and the cause remanded with proper directions.

A few words seem to be advisable directed specially to the opinion of the court to the end that if it be wrong the effect as regards future cases may be minimized.

As I understand it, the discussion includes much that is not matter of decision. The conclusion upon which the final decision rests, I take it, is found in the concluding paragraphs, in which the rule of *Johnson v. Swanke,* 128 Wis. 68,

107 N. W. 481, is adopted. The difficulty is that the question of whether the court below decided the matter guided by proper rules of law was overlooked. It is well, as it seems, it is held that upon the facts it was for the trial court to determine by the exercise of judgment whether equity jurisdiction should be exercised or not.

The reference to the language in *Johnson v. Swanke,* as if it negatived the idea that when one person has a cause of action against each of several he cannot under any circumstances sue all in one action in equity and thereby prevent a multiplicity of suits, is quite misleading. It is not supposed any member of the court thought the language quoted from the *Johnson Case* in the court's opinion here would be regarded as holding that one cannot sue all of a class as well as a class or any one of them in behalf of all sue one in a proper case for the prevention of a multiplicity of suits. The contrary would be out of harmony with the most familiar of elementary principles in equity. 1 Pom. Eq. Jur. (3d ed.) § 251. It is there said, the prime essential in each case is that "there must be some common relation, some common interest, some common question," but not necessarily any relation between the individual members of the class and their common adversary "constituting privity" as that term is ordinarily understood. In view of the quoted language and the following, in the summing up of the matter after reviewing a multitude of authorities, "the jurisdiction has been exercised in a great variety of cases where the individual claimants were completely separate and distinct, and the only community of interest among them was in the question at issue and perhaps in the kind of relief " (1 Pom. Eq. Jur. § 269), it hardly can be said that the complaint in hand is not supported by Pomeroy to the extent of presenting a question of fact as to whether equity should open its doors or not.

I take issue most decidedly with the statement of my breth-

ren that portions of the text in Pomeroy are inconsistent with that in secs. 268 and 269. All seem to be in perfect harmony when one keeps in mind the author's division of situations into four classes, his presentation of diverse views of courts, with some of which he does not agree, and his final summing up in the sections referred to as to the particular class of circumstances to which the instance in hand belongs.

I would not discredit, as it seems the opinion of the court does, the views of so eminent an author as Professor Pomeroy expressed in the sections above referred to, by quoting from a court, which, though of high repute, is without special prominence in the field of equity jurisprudence, since our own court has gone quite as far as the author suggests, and the criticised language has been quoted with approval by the supreme court of the United States and most of the courts of this country. An examination of the note to sec. 269 aforesaid shows that one can almost call the roll of the federal and state courts on the subject. In *Hale v. Allinson,* 188 U. S. 56, 23 Sup. Ct. 244, it was said:

"We are not disposed to deny that jurisdiction on the · ground of preventing a multiplicity of suits may be exercised in many cases on behalf of a single complainant against a number of defendants, although there is no common title or community of rights or interest in the subject matter among such defendants, but where there is a community of interest among them in the questions of law and fact involved in the general controversy."

Is it not a mistake to say that according to Pomeroy there must be some community of interest in the subject matter, or community of title from which all the claims arise, in view of the quoted language?

From the rules we have stated, which are fully sanctioned by the authorities, the fact that in each of the minor controversies here there may be an issue as to betterments requiring substantially independent consideration, also an issue as to

continuity of possession after Muza's possession terminated, does not preclude the exercise of equity jurisdiction. Such diversity of issues and questions is common in equity cases.

SIEBECKER, J. I concur in the opinion of MARSHALL, J.

A motion for a rehearing was denied December 13, 1907.