JOHNSON and others, Respondents, vs. SWANKE, imp., Appellant.

*March 21—April 17, 1906.*

*Equity: Cancellation of written instrument: Adequacy of defensive legal remedy: Trial by jury: Fraud: Judicial discretion: Inconvenience from delay: Multiplicity of actions: Several actions on note: Sales: Rescission.*

1. One who has a complete defense at law to any action which may be brought against him upon a written instrument cannot maintain an action in equity for cancellation of such instrument unless there are special circumstances making such defensive legal remedy inadequate to promote the ends of justice and afford complete relief.

2. The jurisdiction of equity is restricted in such cases in deference to the constitutional guaranty of the right of trial by jury, and such guaranty, liberally construed, determines the extent of the restriction.

3. The fact that the execution of the written instrument was induced by fraud is not, of itself, such a circumstance as would entitle the defrauded party to maintain the action for cancellation, since, where the legal remedy is adequate, a party is entitled to a jury trial in a case founded on fraud, the same as in any other.

4. Whether special circumstances exist in any particular case, rendering the legal remedy inadequate, so that the case is a proper one to be dealt with by equity jurisdiction, is, in the absence of precedents furnishing a certain guide, a matter of judgment; and the decision of the trial court thereon should not be reversed unless clearly wrong.

5. Mere necessity to await the pleasure of the holder of a void instrument to commence action thereon, though it may raise a presumption of annoyance or inconvenience to the party having a legal defense, does not raise a presumption of irreparable injury, and, in the absence of anything to show that the instrument has been or will be used as a basis for vexatious litigation, does not warrant an action for cancellation.

6. Although there are a number of makers of a note which is alleged to be void, each of whom may be sued separately thereon, this fact does not warrant an action for cancellation on the ground that it will prevent a multiplicity of actions.

Johnson v. Swanke, 128 Wis. 68.

7. The fact that a note was given for the purchase price of a horse which the makers were induced by fraud to buy and which is useless and a continuing cause of expense to them, does not warrant an action for cancellation of the note in order that the matter may be speedily adjudicated. Having duly rescinded the contract they may, upon proper notice, sell the horse and reimburse themselves for their expenses, holding any balance for the parties entitled thereto.

APPEAL from an order of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. Reversed.

Plaintiffs' claim was this: February 13, 1904, defendants Keller and Klunt induced plaintiffs and defendants Heideman and Pryse to purchase of the former a horse, agreeing to pay therefor $3,000, according to the terms of a joint and several nonnegotiable, six per cent. interest, promissory note, dated February 12, 1904, which all of said persons, so induced, on the first mentioned day signed and delivered to said Keller and Klunt, in exchange for said horse. Said Keller and Klunt obtained such note by false and fraudulent representations to the makers, in relation to such horse, relied upon by them as being true.

The representations referred to were set forth in detail, coupled with appropriate allegations that they were false, and allegations as to the true character of the animal, to the effect that he was worthless for the purpose for which he was purchased.

Heideman and Pryse refused to join as plaintiffs, and were therefore made defendants. Immediately after discovering the true character of the horse it was tendered back to the sellers, and a return of the note demanded, but acceptance of the tender and likewise a return of the note were refused.

Defendant Swanke is now the owner and holder of the note. Unless restrained by the court he will sell the same. Defendants Keller and Klunt are insolvent, or their property consists wholly of personalty which could readily be sold, so

as to readily prevent the collection of any judgment plaintiffs might obtain against them.

There was a prayer for an injunction preventing any transfer of the note pending the action; that a delivery thereof for cancellation be required; that judgment go against Keller and Klunt for the care and keep of the horse and, if delivery of the note were found impossible, for $3,000 as damages on account thereof; and that defendants further recover their costs.

Defendant *Swanke* demurred to the complaint for insufficiency and for that the plaintiffs' remedy was at law. The demurrer was overruled, and the demurrant appeals.

The cause was submitted for the appellant on the brief of *Max Hoffman* and *Kreutzer, Bird & Rosenberry,* and for the respondents on that of *E. L. & E. E. Browne.*

MARSHALL, J.    The question for consideration on the appeal is this: Does the principle that equity only supplements legal remedies, making up for their infirmities, preclude one who has an adequate defense at law to an ostensibly valid, but in fact void, obligation in writing against him from having the use of equity jurisdiction, at his initiative, to quiet the controversy and obtain a cancellation of the instrument? In other words, must one so circumstanced await the pleasure of his adversary as to time and place of attack, and then vindicate his right by way of defense?

Here, according to the facts stated, the note is void at the election of the plaintiffs and, it being nonnegotiable, the defense thereto can be in no way prejudiced by a transfer thereof to another without notice of its infirmity, there being no element of estoppel, which element is necessarily under the control of the plaintiff to create or prevent. Whenever and wherever the holder of the paper may see fit to invoke a judicial remedy to enforce it, plaintiffs can successfully de-

fend by alleging and proving the facts set forth in the complaint.

As an original matter it would seem that one ought not to be precluded from seeking aid of equity to avoid the menace of a prosecution on a void note, when he would necessarily suffer embarrassment ·and anxiety by having it outstanding against him till the holder might see fit to enable him to show its true character and obtain· a judicial decree in respect thereto by way of defense.   Most men would so tire of such a situation as to be constrained to buy their peace, rather than to have it postponed till such time as their adversary might see fit to attack.   Anciently it was quite common for equity to interfere in such cases where the adverse claim was founded on fraud, without there being any other special circumstances.   The subject will be found extensively dis-cussed in the notes to sec. 914 (3d ed.) of Pomeroy's Equity, where it is said in effect that the American courts, contrary to the English system, have generally adhered to the negative of the suggested proposition; that without special circumstances equity jurisdiction cannot be invoked by way of attack to cancel an instrument to which there is an adequate defense at law.   This is quoted from the opinion of CHRISTIAN, J., in *Wampler v. Wampler,* 30 Grat. 454, as a fair statement of the old and, in the judgment of the text-writer, the better doctrine:

"Courts of equity have an original, independent, and inherent jurisdiction to relieve against every species of fraud. Every transfer or conveyance of property, by what means soever it may be done, is in equity vitiated by fraud.   Deeds, obligations, contracts, awards, judgments, or decrees may be the instruments to which parties resort to cover fraud, and through which they may obtain the most unrighteous advantages, but none of such devices or instruments will be permitted by a court of equity to obstruct the requirements of justice.   If a case of fraud be established, a court of equity will

set aside all transactions founded upon it, by whatever machinery they may have been effected, and notwithstanding any contrivance by which it may have been attempted to effect them. These principles have now become axioms of equity jurisprudence."

He followed that, however, with a confession that the quotation was really contrary to the American doctrine; that there has been a practical surrender by courts in this country of a large part of the jurisdiction in equity as to matters referred to, formerly exercised. He stated the modern rule thus:

"The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and that the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain, and complete."

A reference to the authorities shows that the jurisdiction of equity in this country has been restricted as above indicated, in deference to the constitutional guaranty of the right of trial by jury. This court is in harmony therewith, as suggested by counsel for appellant, referring to *Matteson v. Ellsworth,* 28 Wis. 254, 256, and *Glenwood Mfg. Co. v. Syme,* 109 Wis. 355, 364, 85 N. W. 432.

The yielding up of jurisdiction to entertain a suit to cancel an instrument in a case where it cannot be enforced because of grounds constituting a plain defense thereto at law, has not proceeded to any greater extent than the guaranteed right of trial by jury, liberally construed, seemed to demand. It is limited by the precedents to cases where there are no special circumstances rendering the legal remedy by way of defense inadequate. The following are but a few that might be referred to: *Teft v. Stewart,* 31 Mich. 367; *Springport v. Teutonia Sav. Bank,* 75 N. Y. 397; *Allerton v. Belden,* 49 N. Y. 373; *Farminglon v. Sandy River Nat. Bank,* 85 Me. 46,

26 Atl. 965; *Globe Mut. L. Ins. Co. v. Reals,* 79 N. Y. 202; *Venice v. Woodruff,* 62 N. Y. 462; *Erickson v. First Nat. Bank,* 44 Neb. 622, 62 N. W. 1078; *Johnson v. Andrews,* 28 Ga. 17; *Johnson v. Murphy,* 60 Ala. 288; *Huff v. Ripley,* 58 Ga. 11; *Black v. Miller,* 173 Ill. 489, 50 N. E. 1009; *Vannatta v. Lindley,* 198 Ill. 40, 64 N. E. 735; *Ada Co. v. Bullen B. Co.* 5 Idaho, 188, 47 Pac. 818; *Glastenbury v. McDonald's Adm'r,* 44 Vt. 450; *Ins. Co. v. Bailey,* 13 Wall. 616; *Home Ins. Co. v. Stanchfield,* 1 Dill. 426, Fed. Cas. No. 6,660; *Atlantic D. Co. v. James,* 94 U. S. 207, 214; *Cable v. U. S. L. Ins. Co.* 191 U. S. 288, 24 Sup. Ct. 74; *Ætna L. Ins. Co. v. Smith,* 73 Fed. 318.

In *Ins. Co. v. Bailey* the federal supreme court stated, tersely, what Mr. Pomeroy is pleased to call the American doctrine, thus:

"When a party, if his theory of the controversy is correct, has a good defense at law to a purely legal demand, he should be left to that means of defense, and he has no occasion to resort to a court of equity for relief unless he is prepared to allege and prove some special circumstances to show that he may suffer irreparable injury if he is denied that preventive remedy."

In *Ada Co. v. Bullen B. Co., supra,* the court phrased the rule thus:

"A court of equity will not interfere to decree the cancellation of a written instrument unless some special circumstance is shown to exist establishing the necessity of a resort to equity to prevent irreparable injury."

With very little variation from that, the same doctrine will be found declared in each of the cases cited. The Illinois court, in *Black v. Miller,* stated the matter thus:

"Where a party alleging himself to be injured by the existence of a written instrument has a complete defense against it in an action at law, he cannot ask a court of equity to require its surrender and a cancellation unless the remedy by defense relied on is inadequate to promote the ends of justice and afford complete relief."

The authorities are not all one way on this subject, as will be apparent from an examination of the opinion in *Wampler v. Wampler,* 30 Grat. 454, authorities in Michigan some of which will be hereafter referred to, and others, many of which will be found referred to in the note to sec. 914, Pom. Eq., heretofore cited, and by further reference to secs. 700, 700*a,* Story, Eq. Jur. ι However, the weight of authority, it is believed, is as indicated. In any event, this court, as we have seen, has adopted the so-called American doctrine.ι

Now what will satisfy the call for special circumstances, in a case of this sort, enabling the injured party to invoke equity jurisdiction, cannot be determined by any rule so phrased as to exactly fit all situations. Each case must necessarily stand, to a great extent, on its own particular facts. The rule covering the subject cannot, in the very nature of things, go further than to require that such circumstances must be of a nature which would cause some irreparable loss to the party if he were not permitted to have the use of equity jurisdiction, either because the loss would be of a character not susceptible of measurement in money with any reasonable degree of accuracy, or, if so measurable, the damages would not be recoverable for some reason, or the legal remedy, if none other were usable, would or might probably lead to a multiplicity of actions, or circumstances otherwise locating the cause of action fairly under some one of the recognized heads of equity jurisprudence.

Suggestions may be found, in some cases, that fraud of itself satisfies the call for special circumstances (see *Springport v. Teutonia Sav. Bank, supra,* and *Globe Mut. L. Ins. Co. v. Reals, supra*); and it is uniformly so held in Michigan (*John Hancock Mut. L. Ins. Co. v. Dick,* 114 Mich. 337, 72 N. W. 179; *Mactavish v. Kent Circuit Judge,* 122 Mich. 242, 80 N. W. 1086). Those cases are out of the current, so to speak, however. They seem to be inconsistent with the general doctrine which our court is inclined to firmly adhere to,

that a party is entitled to a jury trial in a case founded on fraud, the same as in any other, the legal remedy being adequate. In most of the cases cited, where it is held that equity jurisdiction is not available, the element of fraud was present. That is true as to each of the federal cases, and also as to each of the cases in this court; particularly in *Matteson v. Ellsworth,* 28 Wis. 254.

Manifestly, whether a case does or does not satisfy the test as to whether equity jurisdiction should be afforded, is not always easy to determine. It must often be a matter of judgment, and necessarily so, where the precedents are not sufficiently clear to furnish the court a certain guide. In the latter situation the decision of the trial court should not be disturbed unless manifestly wrong. Where no certain guide exists as to any particular situation, by way of the general rule illustrated by precedents, as to whether it should be dealt with by equity jurisdiction, the matter in a large degree must be solved by the exercise of judicial discretion. In *Springport v. Teutonia Sav. Bank, supra,* the court said in respect to the matter: "The propriety of affording equitable relief . . . rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case." See, also, *Calhoun v. Millard,* 121 N. Y. 69, 77, 24 N. E. 27. That is stating it pretty strongly. The language should be read with the limitations above suggested. It cannot well be said, either, that the element of fraud entitles the wronged party, as matter of right, to the use of equity jurisdiction, where his defense at law would be full and adequate, nor that in such circumstances it is a matter within mere judicial discretion, in the ordinary sense of that term, to permit the use of such jurisdiction or deny it. It is a matter to be determined by judgment as regards whether there are special circumstances rendering the legal remedy not wholly adequate to the case. In that field the trial court must necessarily be allowed a pretty wide scope for the exer-

cise of discretion.   The result should not be reversed, unless clearly wrong, but where the special circumstances are found to exist, then the use of equity jurisdiction should be regarded as matter of right.   In holding to one of the two criticised theories, the guaranteed right of trial by jury was overlooked to the extent of exempting, without warrant, it seems, a class of cases where the right is susceptible of being fully vindi-cated at law; and in holding to the other such theory, the guaranty as to such class is held to be subservient to the mere favor of the court as to whether it shall or shall not be en-joyed.

In the light of the above rule and illustrations of its appli-cation, we are unable to perceive why plaintiffs have not a plain and adequate remedy for the wrong complained of by way of defense at law, in case of their being sued on the note; and we are likewise unable to perceive how there can be such danger by relying on that remedy as to warrant displacing the right of trial by jury to enable them to have the use of equity jurisdiction.

If it were suggested that such jurisdiction only can compel the surrender of the instrument for cancellation, that is met, first, by the authorities that even where the old practice pre-vails, as to law and equity, the latter is not usable merely to compel the cancellation of an apparently good but in fact void obligation (*Black v. Miller,* 173 Ill. 489, 50 N. E. 1009); second, that mere necessity to await the pleasure of the holder of the instrument to commence action, though it may raise a presumption of probable annoyance and inconvenience, does not of irreparable injury in a pecuniary sense.   Equity ju-risdiction is not open to any one on the ground of mere con-venience.   *Vannatta v. Lindley,* 198 Ill. 40, 64 N. E. 735.

The fact, if it be a fact, as suggested in the vigorous note to sec. 914 of Pomeroy, that in such cases "justice could be administered, and the rights of both litigants protected far better by the trial judge than by leaving everything to the rough and ready justice of an ordinary jury," would furnish

no warrant for opening the doors of equity in cases where they are closed by the constitutional guaranty as to the right of trial by jury; otherwise there would be but very little basis for any limitation to the displacement of such right by equity. The quoted language involves an attack upon the constitutional system rather than upon the practice under it. However, we are not ready to admit that the time-honored idea is wrong, that the rights of parties as to matters of fact can best be entrusted, for protection, to the judgment of a jury, guided as to the law by a careful and intelligent judge.

There is nothing alleged which can bring the case under that head of equity relating to the prevention of a multiplicity of suits. That does not apply merely because each of several parties jointly and severally liable may be independently sued. It applies where one party may be sued several times in relation to the same subject matter in its entirety, or in respect to some element or elements thereof. Here there is but one instrument. The right under it, whatever it may be, can only be asserted as to any defendant in one action. This phase of the case will be found treated in several of the authorities cited.

The idea that delay of opportunity for respondents to obtain a judicial remedy, in case of their being compelled to wait upon the pleasure of appellant to bring suit, and possible prejudice to the former by the latter being left at liberty to choose his own time and place for attack, and that such considerations should appeal successfully to equity, is met in the cases cited. The statute furnishes ample opportunity for the perpetuation of evidence; which is an answer in part (*Springport v. Teutonia Sav. Bank*, 75 N. Y. 397), and the mere possible prejudice mentioned is not deemed sufficient (*Vannatta v. Lindley, supra*), which completes the reply. If there were facts alleged to the effect that the instrument has been or will be used as a basis for vexatious litigation, the case might be different.

It is suggested that since the horse is a useless animal, his

being left on respondents' hands has been, and will continue to be, a cause of prejudicial expense to them, giving rise to a peculiar necessity for the matter complained of to be speedily adjudicated, since Keller and Klunt are irresponsible except as to personal property, which they can readily dispose of and thereby defeat any judgment respondents may obtain against them. That does not indicate imminent danger of irreparable injury, first, because it cannot be anticipated that Keller and Klunt will so attempt to defeat a judgment, and, second, because respondents can by taking the proper course at any time liquidate their damages caused by necessary care and keep of the horse to the extent of its value, provide for compensation therefor, and at the same time avoid the necessity of incurring further expense in respect to the animal. Having fully rescinded the contract by a proper offer to return the animal and repudiation of the contract of sale, they need not then abandon the horse nor keep him on expense; they can, after giving the owner full opportunity to take him away and proper notice, sell it, exercising reasonable care to secure the best price fairly obtainable, using the proceeds to reimburse the expenses incurred in taking care of it, and holding the balance for the use of the party or parties entitled thereto.

So there is nothing alleged expressly or by reasonable implication, which will warrant affording to respondents the jurisdiction of equity. So far as appears, they must rely upon their defense at law. Such being the case, the court could not, by any proper exercise of discretion, entertain the complaint. The demurrer should have been sustained.

*By the Court.*—The order appealed from is reversed, and the cause remanded with directions to sustain the demurrer, and for further proceedings according to law.

Cassoday, C. J., took no part.