HALL, Appellant, vs. BANK OF BALDWIN, imp., Respondent.

*September 13—October 4, 1910.*

*Contracts: Rescission: Equity: Adequate remedy at law: Insolvency: Conditions precedent: Restoration of property: Fraud: False representations: Matters of record: Notice: Negligence: Pleading: Liens: Flexibility of equitable relief.*

1. A complaint for rescission of contract on the ground of fraud, to be sufficient for such purpose, must show special circumstances, in the judgment of the court, rendering rescission by act of the plaintiff and his remedy at law not adaptable at all to cure the wrong, or to do so adequately.

2. The decision of the trial court respecting sufficiency of special circumstances mentioned in the foregoing, relates to matter of fact and should not be disturbed on appeal unless clearly wrong.

3. A statement of circumstances, in connection with a showing of fraud warranting the wronged party in rescinding the contract by his own act, indicating that the wrongdoer is insolvent and there is no person adequately coercible at law to reimburse the plaintiff, are sufficient for equity to deal with the matter.

4. Neither an offer before suit to restore to the wrongdoer the property received from him on a contract rescindable for fraud, or plea of willingness to restore, is a condition precedent to maintenance of an action in equity for rescission, though failure to make such offer or plead such willingness are proper circumstances to be considered on the question of costs.

5. Where the representations, rendering a transaction rescindable for fraud, relate to matters of record, the wronged party is not chargeable with notice of the facts, but may rely on such representations, in the absence of knowledge of the truth or want of ordinary care in respect to the matter.

6. A person, induced by false representations to deal with another under such circumstances as to render him capable of rescinding the transaction on the ground of fraud, does not, within the limitations of the written law, lose any remedy to redress the wrong by mere delay to act in the matter, prior to receiving knowledge of the facts or failure by reason of want of ordinary diligence to obtain such knowledge.

7. The rule requiring an offer to restore what a person has received on a contract rescindable for fraud, or competency or willingness in that regard, goes no further than justice, as regards the wrongdoer, demands under the circumstances of the case, such

rule being purely of an equitable rather than of a technical nature.

8. Anything short of an unconditional offer by the defrauded person to restore what he received on a contract rescindable for fraud, or willingness, or competency in that regard, which does not. prejudice the wrongdoer, as by a retention of money received in part payment upon the contract, leaving such wrongdoer liable to respond upon a basis which accords him full benefit of the money retained, is to all intents and purposes a return of such money.

9. Insistence, before suit by a defrauded person, upon retaining the property received upon a contract rescindable for fraud, persisted in by the pleading in an action in equity for rescission, does not necessarily render such pleading insufficient to state a good cause of action.

10. Where it appears necessary to the protection of a defrauded party that he should have a lien on the property received by him on a contract rescindable for fraud, in an equitable action to that end he may be adjudged to have a right equivalent to a lien on such property to secure restoration of the consideration parted with by him on such contract, and the court may adapt its decree so as to adjudge the extent of the lien, fix it upon the property, and provide for its just enforcement.

11. The foregoing rule is based on the broad doctrine that "such is the flexibility of courts of equity in adapting their decrees to the actual condition of the parties that its pervading excellence is, that it varies its adjustments and propositions so as to meet the very form and pressure of each particular case in all its complex habitudes."

12. If a person having possession of a subject of purchase, obtained in a transaction rescindable for fraud, be so circumstanced that it is essential for his protection that he retain such subject as security, and that may be done without injustice to the wrongdoer, a court of equity—without any offer by the former to return such subject, except upon condition of the consideration parted with therefor being restored, or there being protection to that end—may afford a remedy by rescission and retention of such subject as security for a return of such consideration, shaping the decree to fit the particular case whatever may be. "its complex habitudes."

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for St. Croix county: E. W. HELMS, Circuit Judge. *Reversed.*

Action for equitable relief. The complaint, aside from stating the corporate existence of the defendants, contains the following, in substance: October 1, 1904, defendant Wisconsin Blue Grass Land Company, having only an equitable interest under contracts from the owners, subject to large amounts of back taxes, unpaid purchase money, and prior mortgages, to certain lands in Wisconsin and Minnesota, agreed, in writing, to sell certain thereof (specifying land in Pine county, Minnesota) to David, Leonard, and Homer King, taking their notes therefor for upwards of $2,300 with the land contract, the latter being so executed as not to be recordable. The stockholders and officers of the land company and of the defendant bank were and are, in the main, the same persons. Said bank, through its officers, for the purpose of obtaining plaintiff's money, falsely and fraudulently represented to him that said indebtedness from the Kings was a first lien on the lands described in their said contract and was secured by said contract in first-class shape, and, further, that the Kings were men of great wealth, were of undoubted capability to pay said indebtedness, had entered upon the contract land and improved the same at large expense, and that if plaintiff would remit to the bank the amount of money represented by the notes it would cause the contract securing the same to be duly assigned and delivered to him. The bank then held said notes and contract to secure payment of indebtedness to it of said land company. The land was in fact of little value and was not adequate security for payment of said notes; the Kings had not entered upon the land nor improved the same, or paid anything upon the contract, neither were they men of financial responsibility, all of which facts were well known to the officers of said bank when they represented to the contrary as aforesaid. Relying on the representations so made, and not otherwise, plaintiff parted with money to said bank according to its proposition and took therefrom said notes and contract. As soon as he

discovered the truth of the matter he notified the bank that he would not accept said securities for his money, demanded a rescission of the transaction whereby he parted therewith, offered to retransfer the securities turned out to him upon refund being made, and still offers to do so. Said notes and contract are of small value. Said land company has paid on the King notes $680, and there is still due $1,700. Said banking corporation had the usual powers of such corporations under the laws of this state. Its charter has expired. It is insolvent and engaged in liquidating its affairs. The defendant investment company, with knowledge of the facts as to the insolvency aforesaid, took over the bank assets, agreeing to pay specified debts and liabilities, not including the liability to plaintiff, and is now realizing on such assets. Unless a receiver shall be appointed for said bank in the interests of all its creditors, and the said investment company restrained from using the bank assets, the whole thereof will be appropriated, excluding the plaintiff from any interest therein.

July 1, 1905, said land company agreed, in writing, to sell other of its aforesaid contract lands, specifying the same, to Blanche Kimball, taking her note for $1,312 for unpaid purchase money. Said bank, by its officers, with knowledge of the truth, for the purpose, through deception, of obtaining plaintiff's money for the said note and contract, represented to him that said contract and note were a first lien on the land and that the security for payment of the note was first class, whereas the land company had not title of record, or at all, except a contract interest with a large amount of the purchase money unpaid. Said land was of little value and the note and contract offered to plaintiff was not good security for the indebtedness represented thereby. The bank was the equitable owner of said securities. Relying upon the said false representations, plaintiff was induced to and did part with $1,312 for said contract and note and the same were, in due

form, caused by said bank to be assigned to him.  There is unpaid on said note $820 with interest thereon from July 1, 1909.  Said land company has deeded away its interest in said land and disabled itself from carrying out its said contract.  Plaintiff has demanded payment of the sum due him upon the facts stated and payment has been refused.

Plaintiff prayed that the transaction between him and the bank be rescinded; that the latter be adjudged to pay the money advanced by the former for the securities; that he be allowed to retain them as security and return them as the court may direct upon the judgment being complied with; that the bank and its officers be restrained from exercising corporate rights, and that the officers of both corporations be restrained from doing anything with the bank assets pending the action; that a receiver be appointed to take over, preserve, and administer such assets, and plaintiff have such other relief as the court may deem just, together with the costs and disbursements of the action.

The defendant bank demurred to each cause of action, 1st, for insufficiency; 2d, for want of jurisdiction of the court of the subject matter; 3d, for misjoinder of causes of action. The demurrer was sustained upon the first ground and plaintiff appealed.

*Sol. P. Huntington,* for the appellant.

For the respondent the cause was submitted on the brief of *Baker & Haven.*

MARSHALL, J.    This case, in some respects, is like *Hall v. Bell, ante,* p. 296.    It is so in that the trial court tested the sufficiency of the complaint as one for rescission in equity. On that, as said in the former case, it is necessary that the complaint should disclose, in addition to the fact of fraud, special circumstances, in the judgment of the trial court sufficient to warrant equitable action.    Appellant could have rescinded before suit and sued at law, so there was no neces-

sity whatever to resort to equity because of the fraud alone. If there were nothing to vary that, the court had no other course to pursue but to condemn the complaint. *Johnson v. Swanke*, 128 Wis. 68, 107 N. W. 481.

Here, unlike the former case, the complaint shows that there is no solvent party, liable at law for a return of appellant's money. The pleading states, in effect, that the corporation defendant which perpetrated the wrong is no longer in existence, except for the purpose of winding up its affairs; that it is insolvent; that the defendant investment company, with full knowledge thereof and all the facts, took the bank's assets, assuming and agreeing to pay specific liabilities only, leaving the others, and inferentially appellant, to be dealt with by such remedies as the law might afford; a very different situation than in the former case. If appellant had rescinded, restoring the objectionable securities so far as equity required, he would have greatly weakened his position. He would have parted with what he had and been unable to recover anything of the bank because of its insolvency. Possibly the restored property would have passed by the previous general transfer by the bank of its assets to the investment company. But in any event, the bank, unless prevented by judicial interference, could have prevented appellant from reaching the restored property in its hands. He could not have recovered at law of the investment company because of want of any legal liability in that direction. If he could have secured relief in such direction, it would have been by some equitable remedy. So he not only did not have any adequate remedy at law for the wrong done him and could not change that situation by any act of his, but it is difficult to see that he had any effective remedy at law at all.

The facts above referred to show, so clearly, sufficiency as regards the existence of special facts in connection with the fraud, that we are constrained to believe the trial court did not consider the complaint insufficient for want of such facts

under the rule in *Johnson v. Swanke,* 128 Wis. 68, 107 N. W. 481.

We hardly think the complaint was condemned on the ground of laches. Appellant had a right to rely upon the positive statement of fact regarding the securities without examining the records. The land and the records were in a sister state far removed, it seems, from appellant's location. A considerable portion of the contract indebtedness was from time to time paid, which well might, and inferentially did, give appellant a too favorable notion of the securities. As soon as he obtained knowledge of the facts, he insisted upon repayment of his money, so far as he had not obtained it on the securities, offering to return them as they then were, on condition of being reimbursed, necessarily, affording the wrongdoer full benefit of the money already collected. No fact is disclosed showing that appellant was negligent in not discovering the facts earlier, so we pass this branch of the case, assuming that the complaint was not condemned on the ground of laches, and concluding that, if it be otherwise, error in that regard was committed.

It is suggested that there is no cause of action stated for rescission because appellant neither before suit, nor in the complaint, unconditionally offered to return the securities as they were received, or the equivalent, or so offered to return the securities in the condition they were when the fraud was discovered. It is quite likely that somewhere within the scope of this subject the trial court found fatal infirmity in the complaint.

As to the element of offering to return, in a case of this sort, before suit, no such offer is essential to the cause of action. It may or may not affect, according to circumstances, the question of costs in case of plaintiff's recovering. That is elementary.

As to willingness to restore, or offer or competency in that regard, it goes no further than justice requires. The rule

in regard to the matter is equitable, not technical. Unreasonable or impossible things, which would not under the circumstances tend to secure equity, are not required. *Friend Bros. C. Co. v. Hulbert,* 98 Wis. 183, 73 N. W. 784; *Gay v. D. M. Osborne & Co.* 102 Wis. 641, 644, 78 N. W. 1079; *Gates v. Raymond,* 106 Wis. 657, 82 N. W. 530; *Bowe v. Gage,* 127 Wis. 245, 106 N. W. 1074. The letter and logic of the cited cases is that anything short of a full refund which does not prejudice the wrongdoer, as retention of money received in part payment on a contract rescinded for fraud, leaving the wrongdoer liable to respond in money by way of damages, or as a debt, the retained money *pro tanto* reducing the liability, is, to all intents and purposes, a delivery of the money to the defrauder. So said in *Bowe v. Gage, supra.* So here a return of the partly paid out securities to the wrongdoer, the payments made operating, as they would, to discharge, *pro tanto,* its liability to restore appellant's money, would be, in effect, a delivery to the former of the money received by the latter on such securities, and all the return equity would require. So, on that score, there was ample room in the facts pleaded for the court to afford protection to the investment company and grant the prayer for rescission.

Does the insistence of appellant before suit, and in the complaint, upon holding the objectionable papers as security for a full return of his money, render the pleading defective? Must a person, necessarily, in a case of this sort, part with control of the property in advance of receiving back his money,—or may he retain it, if in the judgment of the court justice requires that to be done,—charged with a lien to the extent of money due him, contingent upon rescission? The latter would seem to be equitable. That equity has competency to afford such a remedy, we cannot doubt. Having such competency the court should not refuse to open its doors merely for want of a precedent. However, it seems that the principle involved has often been vindicated. The following

cases are sufficiently illustrative thereof: *Wickman v. Robinson,* 14 Wis. 493; *Taft v. Kessel,* 16 Wis. 273; *McIndoe v. Morman,* 26 Wis. 588; *Garner v. Leverett,* 32 Ala. 410; *Cooper v. Merritt,* 30 Ark. 686.

These authorities deal mainly with facts in relation to a vendee who has been induced by fraud of his vendor to purchase realty and improve or make payments for the same, and hold that, upon rescission, the injured party has the equitable right to a lien upon the subject of the transaction, where that is necessary for his protection, and that a court of equity should afford its jurisdiction to determine the measure of the lien, fix it upon the property, and administer the situation as justice requires in the peculiar circumstances of cases as they may be presented.

The principle is laid down generally, not with reference to any particular species of property, but rather in harmony with the boundless field of equity, where legal remedies for wrongs are inadequate, or do not exist at all, circumscribed descriptively in *Perry v. Board of Missions,* 102 N. Y. 99, 6 N. E. 116, as "the general doctrine of equity which gives a right equivalent to a lien when in no other way the rights of the parties can be secured." It is probably not a lien in the strict sense, but the right to a lien, somewhat on the logic of a vendor's right of lien for unpaid purchase money (*Berger v. Berger,* 104 Wis. 282, 80 N. W. 585), but reinforced by the elements of greater propriety for the particular remedy on account of the fraud, and greater necessity for it as a measure of protection for the injured party.

In *Taft v. Kessel, supra,* the court said:

"There are cases where courts of equity have held that a party claiming a right founded on a rescission of a contract, must have restored, or at least offered to restore, what he acquired, as the rule is at law. *Ship v. Wheeless,* 33 Miss. 646, 652. But there are others where it is held, that whenever the contract has been obtained by the fraudulent representations of the vendor as to his title, or where it is necessary for

the protection and indemnity of the vendee, he may insist upon a rescission and recovery of the amount paid, without first restoring possession. *Garner v. Leverett,* 32 Ala. 410, 413; *Coffee v. Newson,* 2 Kelly (Ga.) 442, 460. I approve the reasoning of these cases, and think it applicable to the present. We have held in this state, that the purchaser who has advanced any portion of the purchase money, has an equitable lien on the land as security, where the contract is rescinded on default of the vendor. *Wickman v. Robinson,* 14 Wis. 493. This being so, the retaining possession may be necessary in some cases for the protection of the purchaser; and it would be unreasonable in such cases to compel him to abandon it as a condition of his right to rescind."

In the early case of *Wickman v. Robinson, supra,* the court worked out the right of lien by the same process of reasoning, concluding, "We are satisfied that it is the clear result of equitable principles, that if he chooses to waive any right except the recovery of that which he has paid, he should be held to have a lien." Comparing the justice of the matter with the mere vendor's equitable right, the court said: "It is difficult to imagine upon what principle a court of equity could enforce the one and deny the other."

In *Garner v. Leverett, supra,* speaking to the subject of abandonment to the wrongdoer of the thing received from him as a condition of rescission, while recognizing necessity for such abandonment generally, except where retention is requisite as security, the court said: "Where fraud is the ground of the application, a different rule prevails. There an abandonment of possession is not necessary to the maintenance of a bill for rescission." And, further, in effect: A court of equity, unlike a court of law, may entertain a suit for rescission without a precedent return, or offer to return. It may require a return as a condition of rescission. "Such is the flexibility of courts of equity, in adapting their decrees to the actual condition of the parties, that its pervading excellence, in the language of Mr. Justice Story, is 'that it varies its adjustments and propositions so as to meet the very

Hall v. Bank of Baldwin, 143 Wis. 303.

form and pressure of each particular case, in all its complex habitudes.' "

From the foregoing we deduce as a principle, not suggesting but that it might be even more broadly stated, if a person in possession of a subject of purchase is so circumstanced that he has the right to rescind on the ground of fraud, and it is essential for his protection that he should be permitted to retain the subject of the transaction, holding the same as the property of the fraudulent vendor, subject to such person's equitable right, till he shall have received satisfaction for the consideration he parted with to such vendor in the transaction, a court of equity will, without any offer to return, except conditioned upon a restoration, or protection to that end, of the consideration parted with, afford a remedy for rescission and, incidentally, for retention of such subject and treatment thereof so as to protect such person in his right to a return of such consideration, shaping the decree so as to "meet the very form and pressure of each particular case in all its complex habitudes."

It would be taking too narrow a view of the scope of equity jurisdiction, to hold that, on the facts disclosed here, appellant cannot have relief for the wrong done him, without surrendering all right to the only means of at least partial pecuniary redress; that he must give up the securities, having possibly some value, and even the money received upon them, as seems to be claimed, for what might prove to be a mere shadow of relief, as regards the restoration of his former situation. There is no such infirmity in our jurisprudence. The complaint states a good cause of action, as indicated.

*By the Court.*—The order appealed from is reversed, and the cause remanded for further proceedings according to law.

TIMLIN, J., dissents.