## BARSTON et al. v. MINGO DRAINAGE DIST. et al.

(District Court, E. D. Missouri, S. E. D.   March 25, 1920.)

### No. 155.

Injunction ⟨key⟩26(4)—Avoidance of multiplicity of suits held not to extend to re-straining actions against drainage contractor.

Jurisdiction of equity on the ground of preventing a multiplicity of suits *held* not to extend to a suit by a defaulting contractor to do work for a drainage district, who had given bond and also a contract to indemnify his surety, to enjoin the district, the surety, and creditors, to whom he was indebted for labor and materials, from bringing actions on any claims they might severally have against him, and to require them to submit such claims in that suit.

In Equity.   Suit by Charles F. Barston and others against the Mingo Drainage District and others.   On motion to dismiss bill. Granted.

Oliver & Oliver, of Cape Girardeau, Mo., for plaintiffs.

Wammack & Welborn, of Bloomfield, Mo., and Charles & Rutherford, of St. Louis, Mo., for Mingo Drainage District.

Russell L. Dearmont, of Cape Girardeau, Mo., and Arnot L. Sheppard and Sam M. Phillips, of Poplar Bluff, Mo., for various defendants.

Jeffries & Corum, of St. Louis, Mo., for defendant Casualty Co.

FARIS, District Judge.   Plaintiffs sue in equity to enjoin defendants, New Amsterdam Casualty Company (hereinafter called simply Casualty Company), and some 40 other persons and corporations, from bringing actions in the state courts, against plaintiffs and against the Casualty Company upon a certain bond, which the Casualty Company executed to defendant Mingo Drainage District (hereinafter called simply Drainage District), to secure the faithful performance of a contract of plaintiffs with the Drainage District for the doing of certain swamp reclamation work.   In order to save and hold harmless the Casualty Company upon the bond which the latter gave to the Drainage District, plaintiffs made and executed a contract of indemnity to the Casualty Company.

Plaintiffs having, for reasons not considered pertinent, failed to fulfill their reclamation contract with the Drainage District, this contract was on the 5th day of September, 1919, declared forfeited and at an end by the Drainage District; thus, prima facie at least, creating an obligation in favor of the Drainage District and against the Casualty Company on the bond of the latter.   Of course, I do not rule this point either way.   In addition to this demand in favor of the Drainage District, plaintiffs, as appears from their petition, are indebted to the other 40 or more defendants herein in divers sums and on divers accounts, for the most part, however, for materials, supplies, and labor used in digging ditches and constructing levees for the Drainage District.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Against suits to collect these divers damages and demands, plaintiffs invoke the equitable doctrine of injunction against the bringing of a multiplicity of suits, and hereby they seek to compel all of their creditors to intervene and have judgments herein in their favor, or, as to certain of the demands, to have it decreed in this court that no cause of action exists either against the plaintiffs or against the Casualty Company.

Upon the filing of plaintiff's petition, a temporary restraining order was issued herein, together with a citation to defendants to show cause why a temporary injunction should not be granted as prayed. When this matter came on to be heard upon the citation to defendants to show cause, some of the defendants entered their appearances, some 30 thereof were found and duly served, and some 10 were returned not found in the District.

The Drainage District, which is conceded to be the largest alleged creditor, appeared and moved to dismiss the plaintiffs' bill for want of equity therein; others of defendants answered, denying the right of plaintiffs to an injunction upon the facts; while still others conceded this right and intervened, praying for an adjudication and a decree here for the several amounts due them.

Coming on to be heard upon the motion of the Drainage District to dismiss, plaintiffs contend that they are, upon the facts stated, entitled to a temporary injunction against the threatened institution of a multiplicity of suits. It may be conceded that upon the face of the petition a multiplicity or a multitude of suits against plaintiffs and the Casualty Company is threatened. The difficult question is whether the multiplicity of suits so threatened is such a multiplicity as is contemplated by the well-known and well-settled equity rule pursuant to which equity interposes. These numerous suits, it is averred, will be brought against plaintiffs and the defendant Casualty Company upon the theory that the latter, by executing its bond to the Drainage District, became obligated to pay all of the debts and demands, of whatever sort, which might be incurred by plaintiffs in fulfilling their reclamation contract with the Drainage District. Upon the recovery against the Casualty Company (if it be liable, and upon this point likewise I do not rule) actions will lie in favor of the latter and against the plaintiffs upon the indemnity contract of plaintiffs with the Casualty Company.

No defense in favor of plaintiffs as against any of the defendants, except the Drainage District, is set up in the bill before me. These demands, I repeat, were incurred by plaintiffs in the prosecution of the reclamation contract, and are due to laborers, to merchants and dealers for supplies and materials furnished, and so it is difficult (short of a plea of payment, of which there is none) to infer any defense thereto. With reference to the demand of the Drainage District it is alleged that no action lies in favor of the District either against plaintiffs or against the Casualty Company. This is so, it is alleged, because under the contract the Drainage District retained 10 per cent. of all amounts earned by plaintiffs in the doing of the work actually performed by them, which 10 per cent., it is contended, constitutes

264 F.—15

liquidated damages, and is the limit of the recovery to which the Drainage District is entitled as against either plaintiffs or the Casualty Company. I mention this as part of the facts in the case, but I do not consider it pertinent upon the motion to dismiss, and of course do not pass upon it here.

It is also averred, as upon the advice of counsel, that no liability exists upon the bond made by the Casualty Company to the Drainage District in favor of the creditors of plaintiffs other than the Drainage District. In other words, in favor of those defendants whose demands accrued from their having furnished labor and materials and supplies to plaintiffs to enable them to prosecute the work.

Under these facts are plaintiffs entitled to enjoin defendants from bringing civil actions in the state courts for the amounts due them, and thus compel the several defendants to forego a trial in the state courts before a jury, and to intervene herein, upon the sole equitable ground that the facts stated constitute that multiplicity of suits which gives jurisdiction to a court of equity? I do not think so. I am forced to the view that the multiplicity of suits held in mind by the writers and courts as conferring jurisdiction in equity is an entirely different thing from the situation presented here.

Having made the Casualty Company a defendant, plaintiffs' interests are adverse to it, and plaintiffs cannot here speak for it or bind it. Thomas v. Council Bluffs, etc., Co., 92 Fed. 422, 34 C. C. A. 428; Mechanics' Ins. Co. v. Distilling Co., 173 Fed. 888, 97 C. C. A. 400, 32 L. R. A. (N. S.) 940. Clearly, if the case were one uncomplicated by the contract of indemnity, and by the bond of the Casualty Company for faithful performance of the reclamation work, the mere fact that plaintiffs are indebted to 35 or 40 different persons or corporations, upon 35 or 40 different accounts, would furnish to plaintiffs no ground of equity jurisdiction. If the Casualty Company, as a defendant here, is in law and in fact liable to each one of its codefendants upon its bond to the Drainage District, and if each of these codefendants were threatening suit against the Casualty Company, this would furnish no ground for equity jurisdiction in favor of the plaintiffs; for, if all these several codefendants should sue the Casualty Company at law and obtain several judgments against it, it would not be necessary for the Casualty Company to sue plaintiffs upon the contract of indemnity held by it from plaintiffs as many times as the Casualty Company itself had been sued. No reason is now observed why a single suit in such case would not suffice; for it is not possible that defendants (other than the Casualty Company) would, or could join plaintiffs and the Casualty Company as joint defendants, and sue them both in the same action, the latter upon a bond and the former upon an open account.

Moreover, it is obvious that the causes of action which may ultimately be brought against plaintiffs by creditors other than the Drainage District have neither facts nor law in common with each other, save and except that possibly they are all open accounts, and that there must be determined in each case, sooner or later, the common question of law whether the Casualty Company is, cæteris paribus, liable

on its bond in each of them. The evidence to prove them, as well as the evidence to defend against them, would be as different and varied as these causes of action are numerous. No two of them would necessarily have any facts whatever in common. Without doubt, in a proper case, the doctrine of equity jurisdiction to avoid a multiplicity of suits is ancient and well settled. The difficulty lies in deciding to what state of facts this doctrine is applicable. By reason of the fact that a sort of twilight zone exists, wherein the causes in which it is applicable, shade imperceptibly into those wherein it is not applicable, courts have had much difficulty with the question, and great diversity of opinion is found to exist. Setting out generally four classes of causes to which the doctrine is applicable, the Supreme Court of Wisconsin, in the case of Illinois Steel Co. v. Schroeder, 133 Wis. 567, 113 N. W. 53, 14 L. R. A. (N. S.) 245, 126 Am. St. Rep. 981, said:

"This jurisdiction has been classified under four heads: (1) When, from the nature of the wrong and the rules of legal procedure, the same party, in order to obtain complete relief, is obliged to bring a number of actions, all growing out of one wrongful act, and involving similar questions of fact and law. , (2) When a dispute is between two individuals, and one institutes or is about to institute a number of actions against the other, all depending upon the same issues of fact and law. (3) When a number of persons have separate claims against the same party, arising from some common cause, governed by the same legal rule, and involving similar facts, and the whole matter can be settled in a single suit. (4) When the same party has or claims to have a common right against several persons."

Dealing more intimately with the details of this jurisdiction, the learned editors of a very valuable compilation deduce from leading and selected cases this rule, to wit:

"Despite the reasoning of the authorities cited in the preceding paragraph, the larger number of cases, and especially the more recent ones, seem to incline toward confining the jurisdiction of equity within a narrower field, in order to conserve and preserve in its full integrity the right of trial by jury. Thus, in some it is said to be a fundamental proposition that a person who seeks to come into equity must himself have an equity, and that jurisdiction on the ground of preventing multiplicity of suits should not be entertained merely to lessen the labors of the court appealed to, or of other courts; and the wholly fortuitous, accidental, and collateral fact that numerous other persons have like, but entirely independent and disconnected legal rights, estates, or defenses cannot, on any conceivable principle, invest him with any right, legal or equitable, and his rights, whatever they may be, are precisely the same as if no person had similar rights. Consequently the trend of the authorities is to the effect that there must be at least some well-recognized ground of equitable interference, or some community of interest in the subject-matter of the controversy, or a common right or title on which all the separate claims and the questions at issue depend, or there must be some common purpose in pursuit of a common adversary where each may resort to equity in order to invoke its aid to adjudicate in one suit the rights of numerous different parties whose claims are separate and distinct; and the mere fact that their separate rights will require the application of the same principle of law, and that their right originally sprang from the source, is not sufficient." 10 R. C. L. 282.

Weighed by this rule, which in my opinion is fairly to be deduced from the great weight of authorities (Johnson v. Swanke, 128 Wis. 77, 107 N. W. 481, 5 L. R. A. [N. S.] 1048, 8 Ann. Cas. 544; Southern Steel Co. v. Hopkins, 174 Ala. 465, 57 South. 11, 40 L. R. A.

[N. S.] 464, Ann. Cas. 1914B, 692; Lehigh, etc., Co. v. McFarlan, 31 N. J. Eq. 730; Tribbette v. Railroad, 70 Miss. 182, 12 South. 32, 19 L. R. A. 660, 35 Am. St. Rep. 642; 22 Cyc. 791), as well as from the reason of the thing, I am of opinion that there is no equity in plaintiffs' bill, and that the facts stated therein do not confer jurisdiction on this court. It follows that the motion to dismiss the bill ought to be sustained. Let this be done.