TOM ARLEDGE, Plaintiff in Error, v. MRS. JOSIE RIDGE, Defendant in Error.

Middle Section. December 6, 1930.

J. T. Raulston, of South Pittsburg, for plaintiff in error.
J. W. Morrison, of Jasper, for defendant in error.

DeWITT, J.   This suit in replevin was brought before a Justice of the Peace by Mrs. Josie Ridge to recover of Tom Arledge possession of a mule. From a judgment in her favor, Arledge appealed to the Circuit Court, where the cause was tried to a jury. The jury awarded possession of the mule to the plaintiff, but also awarded to Arledge the sum of ten dollars against Mrs. Ridge and her sureties, as the amount received by her from sale of a mare which Arledge had swapped to her for the mule and for which she should account to him. The trial judge approved this verdict and rendered judgment accordingly.

The claim of Mrs. Ridge was based upon her previous ownership of the mule; her parting with him for the mare through the fraud and deceit of Arledge; the value of the mule as $60 and that of the mare as $10. Her theory is that because of this fraud and deceit title to the mule never really passed from her.

There is material evidence that the mule was worth $60; that Mrs. Ridge, being a widow depended upon her cousin, Joe Tanner, for help in business matters; that she had no feed for the mule and asked Tanner to sell him; that Arledge heard of this and went to negotiate with Mrs. Ridge; that he told her that he had a mare that was a good worker and which she could use better than the mule, a good saddle animal; that he told her that Tanner wanted her to take the mare and had sent him for the mule; that she had never seen the mare, but relying on Arledge's representations, which turned out to be false, she sent her little boy with Arledge after the mare and allowed Arledge then and there to take the mule. She testified that as soon as the boy came with the mare she discovered that she had been imposed upon, that Arledge had misrepresented the mare to her. She said: "The mare had something wrong with her hind parts, she could hardly walk, would not work and was not bridle wise and was in fact no value to me." She brought this replevin suit. At the trial before the Justice of the Peace she offered to return the mare to Arledge. She said: "He heard and understood my position. It went on for about two months and he never came after the mare or said anything about it. I sold the mare for $10. I think this was more than she was worth. I never saw Tom Arledge and did not tender the $10 to him.

I am a widow and have several small children. My husband died leaving me with this stock. I would not have allowed Arledge to take the mule if it had not been what Arledge told me Joe Tanner sent him to do.''

Joe Tanner testified that he told Arledge that Mrs. Ridge would not trade the mule for the mare, but she wanted to sell the mule as she had no feed; and that he never told Arledge that it would be a good trade for her to swap the mule for the mare.

The denials of Arledge cannot be looked to on appeal, for the verdict of the jury has settled all conflicts of testimony. Both parties proved good reputations for veracity by a number of witnesses, but that is not an issue before this court.

As the plaintiff tendered back the mare to the defendant and he refused the tender, she was left with the burden of feeding a practically worthless animal. She kept it a reasonable time and sold it for as much as it was worth. It is now insisted that by the sale of the mare it became impossible to place the parties in statu quo; that the plaintiff ratified the sale by treating the mare as her own property and selling her, after she had discovered the fraud perpetrated upon her.

The Uniform Sales Act (Ch. 118, Acts of 1919, sec. 9, subsec. 2) abolished the distinction between sales and barter or exchange, by providing that the price may be payable in any personal property. Williston on Sales (2 Ed.), secs. 9a, 166, 170. As this act controls, a defrauded party to an exchange of personal property has the same right to rescission as would a defrauded buyer or seller at common law. Fraud or misrepresentation on the part of the buyer entitles the seller to reclaim the property from the buyer, upon return, or offer to return, the consideration. Uniform Sales Act, sec. 69; Williston on Sales (2 Ed.), sec. 610; 35 Cyc. 136, 508.; 24 R. C. L., 327. The plaintiff was therefore entitled to recover possession of her mule. What else could she do with the mare? She tendered the mare, then waited two months and sold the mare for its full value. She should have then tendered the money to the defendant, but the court has awarded a recovery against her for this sum. There is no evidence that she claimed the ten dollars as hers or was unwilling to pay it to Arledge. In a leading case it was held that where the purchaser of a horse has fully rescinded the contract by a proper offer to return the animal, he need not then abandon it or keep it on expense, but after giving the owner full opportunity to take the animal away, and upon proper notice, he may sell it if he exercises reasonable care to secure the best price obtainable. Johnson v. Swanke, 128 Wis., 68, 5 L. R. A. (N. S.), 1048, 107 N. W., 481, 8 Ann. Cas., 544. It is the general rule that the party who rescinds a contract on the ground of fraud must, as a general rule, place the other party in statu quo by returning what he received; but the party guilty of the fraud is not entitled to anything

more than substantial justice, and a fair opportunity to receive what he has parted with. It is sufficient if the party defrauded restore the property as far as he is able, and secure to the wrongdoer the equivalent of what cannot be returned. Clark v. Wells, 127 Minn., 353, 149 N. W., 547, L. R. A., 1916F, 476, and notes thereto. See also 6 R. C. L., p. 941, sec. 322.

From the circumstances shown, it cannot reasonably be inferred that the plaintiff, Mrs. Ridge, intended to ratify the trade or to treat the mare as her own. It would be unjust to visit such a judgment upon her. It would result in an unconscionable advantage to the defendant.

The award of a recovery of ten dollars against the plaintiff is not questioned on this appeal, and we are not called on to determine whether or not such a judgment can properly be rendered in a replevin suit.

It is very evident that a return of the mare before suit was brought, or a tender of the proceeds of the mare after she was sold, would have been an idle ceremony. Such return or tender is excused by the position taken by the defendant. It is very evident that he would have refused the mare or the proceeds if tendered. 35 Cyc., 150; Southern Brass & Iron Works v. Exeter Machine Works, 100 Tenn., 67, 70 S. W., 614.

The jury and the trial judge have endeavored to do justice between the parties. The assignments of error are overruled and the judgment of the Circuit Court is affirmed, so far as it is affected by the assignments of error, at the cost of the plaintiff in error.

Faw, P. J., and Crownover, J., concur.