# ELIZA R. P. CHRISTIAN, AN INCOMPETENT PERSON, BY HERMAN V. von HOLT, HER GUARDIAN, *v.* WAIALUA AGRICULTURAL COMPANY, LIMITED.

## Nos. 2428 and 2429.

ARGUED FEBRUARY 10, 1940.                    DECIDED MARCH 25, 1940.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE McLAUGHLIN IN PLACE OF COKE, C. J., DISQUALIFIED.

354

OPINION OF THE COURT BY PETERS, J.

This is a proceeding instituted by the incompetent Eliza R. P. Christian, by the guardian of her estate, before the presiding judge at chambers of the circuit court of the first circuit, to enforce the terms and provisions of the final decree in this case, dated March 25, 1935. This decree will be hereinafter ·referred to as "the final decree." Any other decree to which we may hereinafter refer will be differentiated by reference to its date. The final decree was not entered in the trial court but was entered by this court under and pursuant to the powers reposed in it by R. L. H. 1935, § 3595. For a history of the proceedings prior to final decree see 31 Haw. 242,

348, 817; 32 Haw. 30, 67; 33 Haw. 34; 93 F. (2d) 603; 94 F. (2d) 806; 304 U. S. 553; 305 U. S. 91, 673. The action in which the decree was entered was a suit in equity instituted by the incompetent, by the guardian of her estate, against the Waialua Agricultural Company, Limited (hereinafter referred to as the "W. A. Co."), and others, to cancel as to said incompetent three instruments to which she was a party and had executed prior to her incompetency, being judicially ascertained, to wit, a deed to the agent of the W. A. Co., dated May 2, 1910, in which she joined as grantor, a lease to the company, dated March 17, 1905, in which she joined as lessor, and a contract for her maintenance and support, dated August 31, 1906, between herself and her cousin, Annie Holt Kentwell, upon the ground, among others, that at the respective times of the execution of said instruments she was mentally incompetent to execute the same. This court granted relief as to the deed of May 2, 1910, and ordered restoration of the parties to their respective *stati quo ante* but declined to cancel the lease of March 17, 1905, or the contract of August 31, 1906.

The final decree, with the exceptions hereinafter noted, follows the terms and conditions prescribed in the opinions of this court of April 18, 1931, and May 3, 1934, reported in 31 Haw. 817 and 33 Haw. 34, respectively. But whereas the terms and conditions of the decree prescribed in the opinion of May 3, 1934, contained in the report thereof at pages 63 to 66, both inclusive, provide that the amount of the mortgage that might be given in lieu of cash be the sum of "$30,000, with interest at six per cent per annum from May 2, 1910, to the date of the final decree," the final decree provides that the amount of such mortgage be "the sum of $30,000.00, together with interest thereon at the rate of 6% per annum from May 2, 1910, to the date of the reconveyance" of the interest of the in-

competent in the premises subject to the canceled deed and whereas, by the terms and conditions of the decree prescribed in said opinion of May 3, 1934, the incompetent was afforded the alternative of "assuring to the W. A. Co. the payment of said sum together with interest by a mortgage upon the interest so reconveyed or in any other satisfactory manner," the decree permits three alternatives, *viz.*, (1) cash, *i.e.*, "payment to it [W. A. Co.] of the sum of $30,000.00, together with interest thereon at the rate of 6% per annum from May 2, 1910, to the date of the reconveyance," or (2) mortgage, *i.e.*, "upon the giving to Waialua Agricultural Company, Limited * * * a good and sufficient first mortgage * * * as security for the payment of said sum of $30,000.00, together with interest"; or (3) assurance, *i.e.*, "upon assurance to the said Waialua Agricultural Company, Limited, of the payment of said sum with interest." Those portions of the final decree material to our consideration are quoted in the margin.[1]

---

[1] "That subject to the performance or offer of performance made by Eliza R. P. Christian of the terms, conditions and provisions of this decree to be performed by her, that certain deed dated May 2, 1910, by and between John Dominis Holt, Eliza R. P. Christian, Annie Holt Kentwell and Lawrence K. Kentwell, therein named as grantors, and James L. Holt, therein named as grantee, a copy of which deed is annexed to the amended petition on file herein and made a part thereof and marked Exhibit 'B', be and said deed is hereby declared and adjudged canceled, annulled and void; and of no effect as to Eliza R. P. Christian named as grantor therein, being the same Eliza R. P. Christian appearing herein as petitioner-appellee by her duly appointed guardian.

"That respondent Waialua Agricultural Company, Limited, upon the payment to it of the sum of $30,000.00, together with interest thereon at the rate of 6% per annum from May 2, 1910, to the date of the reconveyance hereinafter referred to, or upon the giving to Waialua Agricultural Company, Limited by said Eliza R. P. Christian of a good and sufficient first mortgage satisfactory to the said Waialua Agricultural Company, Limited, or to a court having jurisdiction in

The trial judge found that the incompetent was pecuniarily unable to make immediate restitution in cash; that a good and sufficient first mortgage upon the incompetent's interest in the property to be restored and reconveyed to her, pursuant to the decree, was best calculated to subserve the interests of the incompetent and assure payment to the W. A. Co. of the amount required; that the final decree being silent as to the time of payment of the mortgage, a reasonable time was implied and a reasonable time within which payment might be made was the remaining period of the life of the incompetent, together with the period reasonably necessary for the administration of her estate after her death, computed to be a period of seven months after her death, and on September 6, 1939, entered a decree accordingly. Attached to this decree, to be executed by the respective parties in effectuation of the final decree, are a form of deed and a form of mortgage found to be satisfactory to the court.

Both the incompetent, by her guardian, and the W. A. Co. perfected appeals to this court from the decree of September 6, 1939.

the premises upon the interest and property restored and conveyed to her pursuant to this decree, as security for the payment of said sum of $30,000.00, together with interest thereon as aforesaid, or upon assurance to the said Waialua Agricultural Company, Limited, of the payment of said sum with interest as aforesaid, satisfactory to said Waialua Agricultural Company, Limited, or to a court having jurisdiction in the premises, shall by good and sufficient deed, which deed shall be joined in by the said Eliza R. P. Christian, quitclaim and reconvey to the said Eliza R. P. Christian, petitioner-appellee herein, upon the terms and conditions of this decree and subject to the exceptions and reservations in fee simple in favor of the said Waialua Agricultural Company, Limited, hereinafter set forth, all of the property and interest therein which the said Waialua Agricultural Company, Limited, acquired from her under and by virtue of the aforesaid deed of May 2, 1910, being an undivided one-third interest in fee simple, unencumbered, in and to all the following described real property."

Those terms and provisions of the approved forms of deed and mortgage which are in controversy, are quoted in the margin.[2] They are the granting clause of the deed (1), the defeasance clause of the mortgage (2) and what, for want of a better term, might be called a partial release clause of the mortgage (3). It will be observed that by the granting clause of the approved deed the grantor W. A. Co. quitclaims and reconveys unto the incompetent, subject to the exceptions and reservations thereinafter set forth, all of the property and interest therein which the said grantor acquired from the grantee under and by virtue of the deed of May 2, 1910, being an undivided one-third interest in fee simple unencumbered; that by the defeasance clause of the mortgage the conveyance, by way of mortgage, is conditional and defeasible upon the payment to the mortgagee of the sum of $82,800 (apparently the sum of $30,000, together with interest thereon at the rate of six per cent per annum from May 2, 1910, to the date of reconveyance), together with interest thereon at the rate of six per cent per annum from the date of the mortgage; that interest is not payable currently but post-

---

2 (1) "That WAIALUA AGRICULTURAL COMPANY, LIMITED, * * * does hereby quitclaim and reconvey unto the said Grantee, subject to the exceptions and reservations hereinafter set forth, all of the property and interest therein which the said Grantor acquired from the Grantee under and by virtue of the deed of the Grantee dated May 2, 1910, being an undivided one-third' (1/3) interest in fee simple, unencumbered, in and to the following described parcels of land together with all improvements thereon situated in the District of Waialua, Island of Oahu, Territory of Hawaii, to-wit: [Here follows a description of the property conveyed by grant, award, or patent number and identified by the name of the original grantee, awardee or patentee with the area of each and the total area.]"

(2) "PROVIDED, NEVERTHELESS, that if the Mortgagor, her heirs, administrators or assigns, shall on or before the expiration of seven (7) months from and after the date of the death of her, the said Mortgagor, well and truly pay said sum of Eighty-two Thousand Eight Hundred Dollars ($82,800.00), together with interest thereon

poned to the due date of the mortgage and that the time of payment of the principal sum secured and interest is on or before the expiration of seven months from and after the date of the death of the mortgagor. The so-called partial release clause anticipates the contingency of the sale during the life of the mortgage of the whole or any part of the premises subject thereto for the purpose of providing for the proper medical attention and support and maintenance of the incompetent or for any other purpose approved by a court of competent jurisdiction, including the payment in full of the indebtedness secured, and prescribes a formula upon the application of which to the proceeds of sale would entitle the mortgagor to the release by the mortgagee of the premises sold.

All of the assignments of error involve the meaning to be attributed to the terms and provisions of that portion of the final decree heretofore quoted. Some of the assignments of error involve the legal effect of the silence of the

---

at the rate of Six Per Centum (6%) per annum from the date hereof, said interest being payable upon the due date of the within mortgage, then this mortgage shall be void."

(3) "PROVIDED, FURTHER, that upon application of the Mortgagor to the Court having jurisdiction, and the licensing and approving of the same by said Court, the whole or any part of the above-described property may be sold, either before or after partition, for the purpose of providing funds for the Mortgagor's needed or proper medical attention, or for her proper support and maintenance, or for any other purpose approved by said Court, including the payment in full of said indebtedness should economic conditions or a bona fide sale make the same definitely to her advantage, and the Mortgagee shall, upon payment to it, apply upon said indebtedness such part of the proceeds of such sale equal to Twelve and One Half Per Centum (12-1/2%) in excess of the proportionate value of the land sold to the unpaid balance of said indebtedness, whereupon the Mortgagee shall forthwith release the said lands so sold from the lien created hereby, but in no event shall any part of said land be sold at a sum less than Twelve and One Half Per Centum (12-1/2%) in excess of said proportionate value."

final decree upon the subjects of (a) interest after re-conveyance and to time of payment; (b) a personal under-taking on the part of the incompetent to repay the pur-chase price; (c) the date of repayment of the purchase price and; (d) a subsisting lease from the W. A. Co. to the Hawaiian Pineapple Company, dated January 10, 1923. It therefore becomes important at the outset to determine whether the terms and conditions of the final decree are plain and unambiguous or require interpretation or con-struction. "The meaning and effect of decrees as well as statutes are to be ascertained from the manifest intention of those who make them." *Doscher* v. *Blackiston*, 7 Ore. 404, 406. The final decree, as it should be, is "precise and definite in its terms that the parties may clearly under-stand what acts are to be done by them on the one side and the other, and how their rights are determined." *Goldberg* v. *Krayeske*, 102 Conn. 137, 144, 128 Atl. 27. Moreover, inasmuch as upon cancellation the restorative relief afforded is based upon considerations of equity (*Hall* v. *Bank of Baldwin*, 143 Wis. 303, 127 N. W. 969), and not by way of "compensation to the injured party" or by way of "readjustment of the rights of the parties after a recognized breach of the contract" (3 Black, Rescission and Cancellation [2d ed.] § 616, p. 1482), silence upon claimed equities, in the absence of a manifest contrary intention, is just as much a part of the decree as its express terms. In our opinion the final decree literally and contextually is consistent; its terms and conditions are clear and ex-plicit and interpretative technique is irrelevant. This being so, it must be enforced in accordance with its plain terms. Where, as here, a decree orders the cancellation of a conveyance as to one of the grantors upon the ground that at the time of its execution said grantor was mentally incompetent to execute the same and prescribes the terms and conditions upon and subject to which the parties

may be restored to their respective *stati quo ante* and the terms and conditions imposed are clear and unambiguous, upon a petition to enforce the terms and conditions of such decree, rules of interpretation or construction are irrelevant and the same will be enforced in accordance with and pursuant to its plain terms. Ancillary to this pronouncement and as a corollary thereto, it naturally follows that the final decree may not be amended or modified to include relief other than or additional to that given by the decree and to which the parties may, in view of the rules of law enunciated in the former opinions of this court or in the opinion of the United States Supreme Court, deem themselves entitled. Where a conveyance is canceled upon the ground that the grantor, at the time of its execution, was mentally incompetent to execute the same and the court orders restoration of the parties to their respective *stati quo ante,* the terms and conditions affecting such restoration are imposed by the court upon principles of equity in the light of all of the surrounding facts and circumstances of the case and such terms and conditions must be considered exclusive in the absence of any manifest intention to the contrary. In other words, to the extent that the decree is silent upon other and additional equities to which the parties, under the rules of law enunciated and applied, may deem themselves entitled, it will be presumed that the silence of the court in respect thereof was intentional and not the result of inadvertence and that any other or additional equities claimed were purposely withheld.

The appellant W. A. Co. assigns as error the failure of the mortgage, approved by the trial judge, to contain (1) a promise on the part of the mortgagor to pay; (2) a standard provision as to payment of interest monthly or quarterly; (3) a definite due date and; (4) standard provisions for remedies on default, contending that, al-

though the decree is silent upon the subjects of the omissions, the court, by its final decree, ordered that the mortgage to be executed be a "good and sufficient mortgage" and a good and sufficient mortgage uniformly contains such provisions.

The incompetent, as appellant, complains of the provisions of the mortgage, as approved by the trial judge, in respect of principal and interest, contending that the mortgage should be to secure the principal sum of $30,000, with interest from May 2, 1910, to the date of reconveyance and that under the terms of the approved mortgage the mortgagor is required to pay interest upon interest for the period from the date of the mortgage to its due date. The incompetent's assignment of error in respect to the amount of the mortgage and interest will be considered with the complaint of the W. A. Co. that the mortgage, as approved, does not contain a standard provision as to payment of interest monthly or quarterly. The objections of the W. A. Co. to the approved form of mortgage will be considered *seriatim.*

Does the final decree require that the mortgage contain a covenant on the part of the mortgagor to pay? It should be observed in advance that the final decree does not contain any decretal order requiring the incompetent to make repayment to W. A. Co. of the consideration money or interest. It is optional with her to avail herself of one of the alternatives afforded in order to secure reconveyance if she so desires. The alternatives offered are conditions precedent to her right to reconveyance. If she refuses or fails to perform she is not entitled to reconveyance and the title to the property conveyed by the deed of May 2, 1910, remains vested in the W. A. Co. Ordinarily in cases of this kind restoration is effected by independent orders of repayment and reconveyance. And in the event of the inability of the rescinding grantor to

make immediate repayment, the reconveying grantee is granted a lien upon the property reconveyed in the amount of the repayment required. (3 Black, Rescission and Cancellation [2d ed.] § 694, p. 1651, n. 87; § 697, p. 1656, n. 118.) By the final decree in this case the mortgage was a substitute for a lien. Ordinarily a lien does not contemplate a promise by the lienee to pay interest upon the amount of the lien. The lien imposed is the sole security for repayment. The terms and conditions of the final decree do not indicate any intention on the part of the court to make the incompetent personally responsible for the repayment of the purchase price unless the requirement of a "good and sufficient mortgage" necessarily implies the inclusion of such a covenant on the part of the mortgagor.

In this jurisdiction there is no statutory definition of a mortgage upon real estate. As judicially interpreted, a mortgage upon real property situated in Hawaii possesses many of the legal incidents of a common-law mortgage, except as modified by the common law of Hawaii. A covenant to pay on the part of the mortgagor was not a necessary part of a mortgage upon real property at common law and its absence did not affect the validity of the mortgage as security nor impair the right of the holder to enforce it against the land pledged to the full extent of the debt secured. Nor does the common law of Hawaii, of which this court may take judicial notice, require that a mortgage upon real property situated locally contain a covenant on the part of the mortgagor to pay. No opinion of this court has been called to our attention and independent research has failed to produce a case in which this court has intimated, much less decided, that in order to its validity a mortgage on real property situated within the Territory of Hawaii must contain a promise on the part of the mortgagor to pay the mortgage indebtedness.

Nor does the term "good and sufficient" as applied to the word "mortgage" necessarily imply the inclusion of a covenant on the part of the mortgagor to pay. A mortgage is but the memorial or integration of the contract of the parties thereto. A good and sufficient mortgage of real property, as that term is ordinarily understood, means a form of mortgage legally effective to memorialize and integrate the terms of the mortgage contract between the parties, including such incidental terms and provisions as usually obtain in real estate mortgages executed in the locality in which the mortgaged property is situated, for the protection and enforcement of the respective rights and obligations of the mortgagor and mortgagee. Upon whom, if anyone, rests the personal obligation to pay a mortgage indebtedness, is an essential element of a mortgage contract. The term "good and sufficient" as applied to a mortgage does not include, by implication, essential terms and provisions of a mortgage contract neither expressly nor by implication included therein. Hence, where the mortgage contract of the parties does not include a covenant on the part of the mortgagor to pay and it was the apparent intention of the parties that the property alone should be charged with a lien and that it should be looked to by the mortgagee as the sole source out of which the indebtedness secured may be satisfied, the requirement of the mortgage contract that the mortgagor give a "good and sufficient mortgage" does not include, by implication, the requirement on the part of the mortgagor of a covenant to pay.

Moreover, the meaning to be attributed to the term "good and sufficient mortgage" may be materially affected by the context. The final decree in this case is not a mortgage contract. On the contrary, it is the final adjudication by a court of equity upon the issues raised, including the terms and conditions imposed by the court

and upon the performance of which the complainant may secure the relief to which she is entitled. And to the extent that the final decree, expressly or by implication, includes or excludes terms or provisions usually obtaining in a good and sufficient mortgage, the meaning of the term "good and sufficient mortgage" is necessarily restricted and qualified.

Finally, the final decree discloses the apparent intention of the court to relieve the incompetent of a personal undertaking on her part to pay the mortgage indebtedness. No personal obligation was imposed upon her to pay. The property to be reconveyed alone was charged with a lien. And the lien to be created by the mortgage was apparently regarded as the sole source out of which the W. A. Co. should reimburse itself in the amount secured. This court expressly found that at the time the incompetent executed the deed she was a congenital imbecile and that she never received the purchase price. The court, upon consideration of equity in the exercise of its sound discretion, apparently concluded that the rescinding incompetent should be relieved of the personal obligation to pay and hence made no requirement to that effect. The court no doubt was satisfied that the value of the equity of the incompetent in the premises subject to mortgage was ample security to assure reimbursement to the W. A. Co. of the purchase price. Whatever the considerations moving the court to its conclusions, it was within its powers in equity to relieve the incompetent of any personal obligation to pay. And, in our opinion, the form of the final decree indicates such intention. It is not within the province of this court upon these proceedings to determine the steps necessary to effect restoration of the parties to their respective *stati quo ante*. The *modus operandi* of restoration was prescribed by the final decree. As properly stated by the appellant W. A. Co., the final decree "finally

disposed of the merits of this litigation." It "concluded the merits of this cause." The present proceedings were instituted for, and they were limited to, the enforcement of the terms of the final decree. And, to the extent that the final decree speaks, it is our duty at this time to conform to the method prescribed to effect restoration.

For what amount should the mortgage be given as security and should the mortgage contain a provision for interest upon that amount? In our opinion, a mortgage, consistently with the terms and provisions of the final decree, should be for the sum of $30,000, with interest at the rate prescribed from the date of the canceled deed, May 2, 1910, to the date of the reconveyance. This is a matter of mathematical computation and the principal sum secured by the mortgage should be in the aggregate amount. But no interest is chargeable after reconveyance to time of payment. Hence, the provisions contained in the approved form of mortgage in respect to interest are error. If interest subsequent to reconveyance is not chargeable, the question of whether the failure of the mortgage to require current payment of interest monthly or quarterly was error, becomes immaterial.

Ordinarily the right to recover interest on a mortgaged debt arises by virtue of a contract in or accompanying the mortgage. The final decree in this case is not a money decree. Under its terms, neither is the incompetent a judgment debtor nor is the W. A. Co. a judgment creditor. Hence, the provisions of R. L. H. 1935, § 7051, as amended, do not apply. Nor, under the terms of the final decree, are there any "moneys after they become due or any bond, bill, promissory note, or other instrument of writing," within the meaning of the provisions of R. L. H. 1935, § 7050, as amended. The final decree, as heretofore observed, contains no decretal order requiring the incompetent to make repayment to W. A. Co. of the con-

sideration money or interest. Hence, in the absence of provisions for interest after reconveyance, statutory interest does not apply.

Nor do the terms and conditions of the final decree require the payment of interest after reconveyance to the time of the maturity of the mortgage. The only provision of the final decree which specifically prescribes the period within which interest is to be paid is in the provision permitting payment in cash. And it is therein limited to the period from May 2, 1910, to the date of reconveyance. In the other alternatives afforded, it is provided that the amount of the mortgage include "interest * * * as aforesaid," which means, as provided in the cash alternative, "interest * * * from May 2, 1910, to the date of the reconveyance." Moreover, the terms and conditions of the final decree do not imply that interest is chargeable after reconveyance. On the contrary, the absence of any provision for interest after reconveyance indicates the intention to relieve the incompetent from the payment thereof. This is also manifest from the change from the provisions of the opinion requiring the payment of interest to the date of decree, to interest to the date of reconveyance as required by the decree. The subject of interest was apparently a matter of consideration after opinion and before final decree, indicating that if interest were chargeable after reconveyance the court would have said so.

Resort to the phrase "good and sufficient" as a basis of charging interest after reconveyance is futile. As heretofore pointed out, its efficacy is not to supply terms and conditions upon which the final decree is silent nor to include therein terms and conditions which the court, by its silence, intentionally excluded.

We now come to the consideration of the alleged error of the trial judge in failing to include in the mortgage a definite due date. The question involved is of extreme

importance to both parties to the decree. To the incompetent for the reasons: that the mortgage indebtedness must be discharged within a reasonable time; that, under the decision of this court upon the merits, the rents, issues and profits of her interest in the lands ordered to be reconveyed to her are vested in the W. A. Co. for her life; that, although she is the owner of the fee, the interest to be reconveyed to her for all practical purposes is but a remainder interest; that her present interest is not a collateral in which investors are interested and it is only upon her death and the vesting of the fee in her devisees or heirs-at-law, freed of the encumbrance enjoyed during her life by the W. A. Co., that the same may become available as collateral to discharge the mortgage indebtedness; that, in order to make repayment, it will be necessary for her guardian to take the appropriate steps legally necessary to realize upon her equity in the premises, the time necessary for the consummation of which is unpredictable, and finally, but not the least important, that she may, during her lifetime, realize upon her equity and enjoy those additional necessary creature comforts and pleasures of which she is now denied. To the W. A. Co. that it may be reimbursed in the amount of the purchase price and interest within a reasonable time and that, in the event of sale upon partition, or otherwise, of the undivided interest of the incompetent, it be not denied the advantage of purchasing such interest at its present value uninfluenced by unreasonable delay. Obviously, proportionately as the life expectancy of the incompetent decreases, the present value of her equity increases.

The trial judge, by the terms of the mortgage approved by him, fixed the time of payment at seven months after the death of the mortgagor unless sooner discharged under the partial release clause (so-called) heretofore referred to. The appellant W. A. Co. assigns this as error, con-

tending that the mortgage should contain a definite due date; that the decree being silent upon the subject of time of payment, payment within a reasonable time is implied; that a reasonable time for payment has already elapsed and that this court should now order the repayment of the purchase price at once and that, in the event the direction of this court is not complied with, the incompetent's interest in the land be sold to satisfy the amount of the existing encumbrance and the balance paid to the incompetent's guardian; but if the court is of the opinion that the incompetent, despite the lapse of time since the entry of the final decree, is still entitled to a mortgage, that the due date of the mortgage be fixed not later than sixty days after the entry of the decree of this court; that, consistently with the duties of the guardian and for the best interests of his ward, an early sale of the interest of the incompetent in the property to be reconveyed to her was imperative and that the available legal methods appropriate to that end included an order by this court herein ordering the interests of the incompetent to be sold at an upset price to be ascertained and computed after the taking of evidence upon its present value. The incompetent concedes that the decree being silent às to the time of payment, payment within a reasonable time is necessarily implied but contends that a reasonable time of payment is seven months after the death of the mortgagor, seven months being the time which would be reasonable and necessarily consumed in the administration of her estate after her death. This was the view taken by the circuit judge and the terms of the defeasance clause of the mortgage approved by him are consistent therewith.

Paradoxically both parties are both right and wrong. Unquestionably they are correct in contending that the decree being silent as to the time of payment under the

mortgage, it is necessarily implied that payment be made within a reasonable time. But that does not mean that time of payment be necessarily defined at this time. Had this court, at the time it handed down its last opinion, sufficient facts before it to justify it in determining the time within which the amount secured by the mortgage should be paid, it undoubtedly would have said so. Its failure to fix that time was not the result of inadvertence. The omission unquestionably was intentional. And the confusion that has been interjected into this case results from the attempt of the parties to have the court fix in advance the time within which payment should be made, despite the absence of any additional evidence to sustain their conclusion.

Neither the trial court nor this court had or has any evidence before it upon which to predicate a finding of the time reasonably necessary for the guardian to discharge the mortgage to be imposed. There was no evidence before the trial judge to sustain his conclusion that a reasonable time was the remaining life of the mortgagor plus the period of seven months after her death. Nor was there any evidence before the trial judge to sustain the contentions of the W. A. Co. for a shorter period. The final decree of this court of March 25, 1935, was affirmed by the United States Supreme Court upon *cross-certiorari* to the United States circuit court of appeals for the ninth circuit on November 7, 1938. A petition for a rehearing was denied on December 5, following. The mandate of the United States Supreme Court was directed to this court and was received and filed in this court on March 8, 1939. Notice of decision was given by this court to the presiding judge of the circuit court of the first circuit on the same day. The petition upon this proceeding was filed March 8, 1939, and as already stated it came to decree on September 6, 1939. It does not appear that

there was any lack of diligence on the part of those representing the incompetent in their attempt to prepare a form of deed and mortgage satisfactory to the W. A. Co. No lack of diligence appears in the proceedings below and the case upon the request of both sides was advanced upon the calendar of this court. Until the incompetent is revested with title to her interests in the premises subject to the deed of May 2, 1910, the guardian is not in a position to take any steps, legal or otherwise, for the realization by her of the amount necessary to make restoration of the consideration money. Implicit in the final decree is the assumption that time does not begin to run until the incompetent is revested with title. And what is a reasonable time is to be determined in relation to the date of the execution of the mortgage. Obviously, the decree contemplates that the reconveyance and the mortgage would be executed simultaneously, for, until title is revested in the incompetent, she is not in a position to execute a mortgage and, in our opinion, the reasonable time within which the mortgage indebtedness should be paid begins to run from the date of the execution of the mortgage. Under the circumstances, the contention of the W. A. Co. that a reasonable time for payment has already elapsed or that the latest time of payment should be fixed at sixty days after decree herein has no evidence for its support. Moreover, upon the same reasons heretofore advanced, the evidence of the usual time obtaining in bank loans in this community is irrelevant and of no value.

During the course of the argument counsel for both parties were questioned by different members of the court as to the time that, in their opinion, would be reasonably necessary for the guardian to realize in whole or in part upon the interest of the incompetent in the property to be reconveyed. These questions were calculated to ascertain whether the parties were upon a common ground, ad-

mitting possibly of a stipulation of a time reasonably necessary. But counsel were as divergent in their opinion of time as they were in their contentions. This was due no doubt to the subject matter of the opinion. Too many contingencies are involved to admit of anything beyond mere speculation or surmise. In our opinion, at this juncture, there is no more evidence before this court than there was before it in May, 1934, and March, 1935, upon which to base any finding of the time within which the amount secured by the mortgage should be paid. This court can only say, similarly as it has previously said, that payment should be made within a reasonable time. There is no evidence of any change in the conditions obtaining at the time of the entry of the final decree. And, under the circumstances, the mortgage, similarly as the decree, should remain silent as to the time within which repayment shall be made. In the absence of any time fixed in the mortgage, the amount secured by the mortgage under its terms, similarly as under the terms of the decree, will be payable within a reasonable time. (1 Wiltsie, Mortgage Foreclosure [5th ed.] § 491; *Farrell* v. *Bean,* 10 Md. 217, 233; *Triebert* v. *Burgess,* 11 Md. 452; *Griffin* v. *Smith,* 101 Conn. 219, 125 Atl. 465; 41 C. J., tit. Mortgages § 901, p. 788.) By the inclusion in the premises of the mortgage of appropriate explanatory recitals, the omission from its terms and conditions of a time of payment would be subject to the same construction as the omission of that provision in the final decree. Thus the position of the respective parties will remain and continue the same as fixed by the final decree and the time of payment, as it was intended it should, will depend entirely upon further future developments. We now feel, similarly as this court must have felt at the time the final decree was entered, that it is impossible to anticipate what is a reasonable time and that the question is one

that may only be decided if and when foreclosure proceedings are instituted upon the ground of breach of condition in respect to payment and the mortgagor raises the issue of the maturity of the mortgage upon the ground that a reasonable time for payment had not yet elapsed.

The W. A. Co., as appellant, also assigns as error the requirement of the trial judge of a reconveyance by it of the property and interest of the incompetent unencumbered, as required by the approved form of deed, contending that at most it is only required under the terms of the final decree to give a quitclaim; that the approved deed is tantamount to a warranty deed; that any reconveyance that might be executed should be subject to the lease from it to the Hawaiian Pineapple Company, dated January 10, 1923; that such lease had been ratified by the incompetent through her attorney upon the trial of the main case and that such ratification had been accepted and approved by the trial court, by this court and by the United States Supreme Court.

The ordinarily accepted meanings of the words "quitclaim," "reconvey," "fee simple" and "unencumbered" found in the final decree are too well-understood to require further definition. They are legal terms and are to be construed according to their ordinary legal significance unless it appears that they were employed in some other sense. They are the words of the court contained in its final opinion and adopted in its final decree. They were apparently used by the court advisedly and with due regard to their juristic significance. They described the legal steps by which the rescinding grantor might be restored to her *statu quo ante*. The terms employed were used to legally effectuate the restoration to the grantor of an interest in lands of which she admittedly, at the time of her execution of the canceled deed, was a contingent remainderman of an undivided one-third, which, subse-

quently and prior to suit, ripened into a fee simple. Restoration involved the release by the W. A. Co. of any interest it may have acquired subsequent to the date of the canceled deed and the reconveyance by it to the grantor of the title it had acquired under the canceled deed, unencumbered by any encumbrance made or suffered by it. That the word "unencumbered," as employed in the final decree, refers to encumbrances made or suffered by the W. A. Co. is obvious. If the interest of the incompetent in the lands conveyed by her were subject to an encumbrance subsisting upon the date of the execution by her of the deed of May 2, 1910, it would not be incumbent upon the W. A. Co., either under the law applicable to cancellation of voidable conveyances or under the terms of the final decree, to remove such encumbrance. Upon cancellation of a voidable conveyance, the grantee need only restore to the rescinding grantor the interest in the property conveyed that the latter acquired from the former under and by virtue of the canceled deed. Moreover, the final decree expressly provides that the W. A. Co. reconvey "all of the property and interest therein which [it] * * * acquired from her under and by virtue of the * * * deed of May 2, 1910, being an undivided one-third interest in fee simple, unencumbered." A quitclaim by the W. A. Co. would legally operate to release to the grantee any interest that the grantor might have acquired in the premises to be reconveyed subsequent to the date of the canceled deed. A reconveyance in fee simple, unencumbered, would legally operate to reconvey to the grantee the fee simple title which the grantor acquired under the canceled deed, unencumbered by any encumbrance made or suffered by it. All of the terms employed properly describe the steps legally effective to complete restoration and were properly used according to their respective legal meanings.

A complainant, if successful, is entitled to cancellation of the conveyance which the bill seeks to set aside. Where a deed is set aside, it is usual to direct a reconveyance from the party claiming under it with covenants against his own acts. (9 C. J., tit. Cancellation of Instruments § 205, p. 1260; *Dey* v. *Dunham,* 2 Johns. Ch. 182 [N. Y.]; *Riddle & Parker* v. *Roll,* 24 Ohio 572; *Clark* v. *Malpas,* 4 De G. F. & J. 401, 45 Reprint 1238.) Under certain circumstances a mere quitclaim is ordered. Reconveyance is ancillary to the main relief of cancellation, the extent of the ancillary relief granted depending, in each particular case, upon the equities involved. In the instant case, by the use of the terms employed, the court apparently believed that the equities demanded a quitclaim and reconveyance by W. A. Co. in fee simple, unencumbered. The terms employed admit of no other construction.

Whether the approved deed is tantamount to a warranty deed is, in our opinion, immaterial. It conforms to the requirement of the final decree and, to the extent that it does so, is unobjectionable.

It may be said that the decree is executory and it is incumbent upon the W. A. Co. to remove, prior to reconveyance, all encumbrances suffered by it to the extent that it is personally capable of so doing; that the word "unencumbered" as used in the final decree contemplates a reconveyance of the interest of the incompetent in the premises, unencumbered both in fact and in law. The Hawaiian Pineapple Company, the other party to the lease, was not a party to the main case. But if, as was held in the main case, the Hawaiian Pineapple Company lease by reason of its terms was not an impediment to restoration, it necessarily follows that it is not an impediment to the W. A. Co. releasing the interest in lands subject to reconveyance from the encumbrance of the Hawaiian Pineapple Company lease. If an impediment and if restoration

could not have been granted by reason thereof, relief would have been denied. Whether the approved deed is legally effective to remove the encumbrance of the Hawaiian Pineapple Company, we do not pretend to say. No objection to its form was made by the representatives of the incompetent and we expressly refrain from any criticism thereof.

In support of its contention that the Hawaiian Pineapple Company lease was ratified by the incompetent, the W. A. Co. calls the attention of the court to the original pleadings of the incompetent in the main case, the record in that case including the express election upon the trial by the then attorney for the incompetent to affirm the lease and to accept the benefits of it; to the decision of the trial judge of August 9, 1929, recognizing and accepting such election, and his decree of October 16, 1929, predicated thereon; to the acceptance and confirmation of the incompetent's ratification of the lease in the trial judge's decision of August 18, 1932, and his subsequent decree thereon of September 6, 1932; to the briefs filed on behalf of the incompetent in this court and in the United States circuit court of appeals for the ninth circuit and in the United States Supreme Court. The incompetent admits the truth of the facts to which the contentions of the W. A. Co. relate but rejoins that at the trial of the original action before the circuit judge the incompetent sought not only the return of her property but its rents since the date of the deed of which she sought cancellation; that she, through her counsel, as a measure of this rent for the period covered by the lease, offered to accept that which W. A. Co. had received under the lease; that the decrees entered by the trial judge provided for the return to the incompetent not only of her land but in addition the rental value thereof since the date of the deed and in fixing the amount of that rent the court ordered W. A. Co.

to pay the incompetent her share of the actual paid-up rental received from the Hawaiian Pineapple Company which she, through her counsel, had offered to accept; that having been given the benefit of this lease, the trial judge in his decree determined that the incompetent was bound by its terms; that in the appeal which was taken from the trial judge's decree of 1932 to this court, counsel for the incompetent again took the position that she was entitled to the rental value of the property measured by her proportion of the rents paid to the W. A. Co. under this lease; that this same position was maintained throughout the litigation in the ninth circuit court of appeals and in the United States Supreme Court; that this court and the United States Supreme Court determined that the incompetent was not entitled to recover any rents from her property, either for the period that had expired or for the balance of her life, and accordingly was not entitled to the benefits of the 1923 Hawaiian Pineapple Company lease; that in framing its decree of March 25, 1935, this court, and in affirming that decree the United States Supreme Court, as a consequence therefore omitted the determination contained in the trial judge's decree of 1932 that the Hawaiian Pineapple Company lease constituted a burden upon the incompetent's interest in the land and ordered returned to her an undivided one-third interest in fee simple, unencumbered, save for sundry exceptions and reservations set forth in detail which did not include the Hawaiian Pineapple Company lease; that the existence of the lease was well-known to this court and to the Supreme Court of the United States and the reason for each court in equity not including the lease in the exceptions to the otherwise unencumbered title is obvious since, as stated, the decree deprived the incompetent of the benefits of that lease, giving W. A. Co. all of the rents, issues and profits of the land for the duration of the in-

competent's lifetime; and finally that by the terms of the lease the contingency of W. A. Co. losing title to some part of the leased area was provided for and W. A. Co. was permitted, under the terms of said lease in such event, to either substitute other lands for those lost or to extend the term on the remaining lands to compensate for the loss in area.

Holding, as we do, that the final decree of March 25, 1935, is clear and unambiguous, we deem it unnecessary to resort to the pleadings, records, decisions, decrees or briefs of or in the trial court, of or in this court or the United States Supreme Court, as extrinsic aids to its interpretation or construction. All of the factual matters to which the W. A. Co. refer that occurred prior to final decree were before this court and these, with what occurred subsequent to final decree, were before the United States Supreme Court. The Supreme Court made mention of the existence of the Hawaiian Pineapple Company lease. If, as claimed by the W. A. Co., the Hawaiian Pineapple Company lease constitutes an impediment to its restoration to its *statu quo ante,* it is the first time that it has advanced the objection. We have searched in vain in the pleadings filed by the W. A. Co., prior to final decree, for any claim made by it, either directly or indirectly, that the Hawaiian Pineapple Company lease was an impediment to its restoration to its *statu quo ante.* Moreover, the terms of the Hawaiian Pineapple Company lease expressly permit that it be subordinated to a reconveyance at this time by the W. A. Co. of all of the property and interest of the incompetent which it acquired from her under and by virtue of the deed of May 2, 1910. The Hawaiian Pineapple Company lease provides: "IT IS HEREBY MUTUALLY COVENANTED AND AGREED (a) that from time to time and as often as the estate hereby

created in the Lessee in the lands * * * demised by this lease shall cease because of the intervention of a paramount title holder and/or for any other reasons said lands shall pass out of the control of the Lessor * * * the Lessor will so often as the same shall happen forthwith as to each and every acre of pineapple land so lost secure to and place the Lessee in the possession of equal areas of pineapple land for the remainder . of the term of this lease, provided it then has them, and if it cannot then so provide them, then the Lessee may upon the expiration of the term of seventeen and a half ($17\frac{1}{2}$) years hereby created continue in the possession of similar land rent free and under the terms and provisions of this lease, to be carved out of the other land covered by this lease as mutually agreed upon, for a further term, the area so to be occupied and the term of such occupation to be determined by computing in each case the number of years and/or fractional part of a year lost and multiplying such by the area lost in that particular instance." The legal effect of this covenant was construed by the W. A. Co. in its opening brief in this court upon its second appeal as follows: "If Waialua should lose all of the Christian lands it could substitute others or extend the 'acre year' basis. Already a certain amount of pineapple land has passed out of control of Waialua, namely, 283 acres in the Maile pocket, taken by the United States Government in January of 1929, and 283.15 acres representing the interest of the Richardson minors, going out at the time of the expiration of the 1905 lease as to that interest, and since leased to the Hawaiian Pineapple Company by the Richardson minors. * * * Waialua's position under the pineapple lease is not thereby affected, for by the terms of the lease it may substitute other lands or extend the 'acre years' on the balance."

This covenant of the Hawaiian Pineapple Company lease and these admissions of the W. A. Co. were before this court when it determined that complete restoration could be effected upon the terms and conditions prescribed. And it is too late to now complain upon these proceedings that this court inadvertently or otherwise failed to subordinate the deed of reconveyance to be executed by the W. A. Co. to the Hawaiian Pineapple Company lease.

Is the mortgage deficient in failing to include standard provisions for remedies on default?

The appellant W. A. Co. assigns as error the failure of the trial judge to approve the form of mortgage proposed by it in respect to remedies of the mortgagee upon default. In the mortgage proposed by it there are three remedies upon default, viz., bill in equity, and the two statutory remedies, viz., entry and possession and advertisement and sale. The form of mortgage approved by the trial judge confined the remedy upon default to a bill in equity.

This assignment of error was not discussed by the appellant W. A. Co. either in its briefs or upon oral argument. Ordinarily the assignment should be considered as abandoned. Under the circumstances, we deem it unnecessary to analyze or express any opinion upon the relevancy or applicability of the several remedies on default provided in the form of mortgage proposed by it. Suffice it to say that a mortgage, to be a good and sufficient mortgage, need not contain all of the remedies which might by contract be made available to a mortgagee upon default. A mortgage which may be foreclosed only by bill in equity affords the mortgagee full opportunity to enforce its rights and is therefore a good and sufficient mortgage. Furthermore, under the terms and conditions of the final decree, the remedies on foreclosure should be confined to a

bill in equity. Otherwise it might be incumbent upon the mortgagor, in the event of an attempt of the mortgagee to foreclose its mortgage by either of the statutory remedies, to institute a suit to establish that a reasonable time for payment of the mortgage debt had not elapsed. Under the terms of the final decree, in order to foreclose for nonpayment of the indebtedness secured, that burden rests upon the mortgagee.

The partial release clause of the mortgage is objected to by the appellant W. A. Co. But further than characterizing it as "utterly meaningless" its brief is silent upon the subject. Inasmuch as we have concluded that the final decree in these proceedings shall in the interest of expedition be entered by this court, it is proper to state that the clause referred to is objectionable not upon the ground urged but for the reasons that it presumes to act in respect to matters not within the jurisdiction of the circuit judge in this proceeding and makes insufficient provision for partial release. It was not within the jurisdiction of the circuit judge at chambers to determine in these proceedings the contingencies upon which sales by the guardian of the estate of the incompetent may be made of her interest in the mortgaged premises in whole or in part. That is a matter for him to decide when and if his jurisdiction is invoked upon independent proceedings instituted for that purpose. Moreover, the provisions calculated to permit partial release upon sales are incomplete and should be redrafted.

The mortgage, when modified and amended consistent with the views herein exercised, will constitute a good and sufficient mortgage as required by the final decree. The form of deed approved by the trial judge appears to be unobjectionable.

The decree appealed from is therefore reversed. A

decree consistent herewith will be entered upon presentation.

*E. D. Turner (Sloss, Turner & Finney* and *C. M. Hite* on the briefs) for appellee.

*J. G. Anthony (Robertson, Castle & Anthony* on the briefs) for appellant.